## HIRSH *et al.* v. TWYFORD *et al.*

### No. 5304.  Opinion Filed December 30, 1913.

### (139 Pac. 313.)

1. **PROHIBITION—Nature and Purpose of the Writ.**  Prohibition is an extraordinary judicial writ issuing out of a court of superior jurisdiction to keep inferior courts and tribunals within the limits and bounds prescribed for them by law, and its use in proper cases should be upheld and encouraged, since it is of vital importance to the due administration of justice that every tribunal vested with judicial functions should be confined to the exercise of those powers with which it has been by law intrusted.

2. **CLERKS OF COURTS—Duties of—Journal Entries—Ministerial Act.**  The clerk is the arm of the court for which he is clerk, and it is his duty to make a record of the proceedings, orders, judgments, and decrees of his court, but in so doing he acts ministerially as the amanuensis of his court, and under the exclusive jurisdiction and direction of his court.

3. **COURTS—Concurrent Jurisdiction—Mandamus.**  A court of concurrent jurisdiction with another court has no jurisdiction to hear, determine, and direct what orders, judgments, and decrees shall be entered upon the records of the other court.  **Held,** the superior court has no jurisdiction to issue a writ of mandamus against the district court, or the clerk of the district court, to force the clerk to enter on the records of the district court any order, judgment, or decree of that court.

4. **CLERKS OF COURTS—Judgment—Entry—Entry Nunc Pro Tunc.**  Where the clerk has failed, neglected, or declined to enter of record any order, judgment, or decree of his court, the proper remedy is an application to that court, upon notice to adverse parties, for an order directing the omitted order, judgment, or decree to be entered nunc pro tunc.

5. **JUDGES — Disqualification—Special Judges—Jurisdiction.**  When the regular judge is disqualified to try a particular civil cause pending in his court, and the parties, or their attorneys of record, agree upon a member of the bar of the district who is not disqualified, to act as a special judge to try the cause, such special judge has no jurisdiction over any other cause pending, or thereafter commenced, and where such special judge attempts to assume jurisdiction over some other cause or proceeding he will be restrained by writ of prohibition from this court.

6. **PROHIBITION—Evidence.**  On application for prohibition the only inquiries permitted are whether the inferior court is exercising a judicial power not granted by law, or is attempting to make an excessive and unauthorized application of judicial force in a cause otherwise properly cognizable by it, and, consequently, this court will not investigate the merits of the cause before the inferior court.

7.    **SAME—Proper Parties.** The adverse parties to the cause in the inferior court are proper parties, but whether they are necessary or indispensable parties is a question not now decided.

(Syllabus by the Court.)

Application by Robert H. Hirsh and Thomas E. Kirby for writ of prohibition to James S. Twyford, Special Judge of the Superior Court of Oklahoma County, and P. M. Sullivan. Writ granted.

On April 15, 1913, the petitioner, Robert H. Hirsh, as plaintiff therein, commenced an action of ejectment against respondent, P. M. Sullivan, and his tenant, G. W. Briscoe, in the superior court of Oklahoma county to recover a certain tract of land, and damages for its detention; defendant Sullivan made an application for change of judge, and, in a few days thereafter, filed an answer; the regular judge vacated the bench, and the parties, to wit: Robert H. Hirsh, as plaintiff, and P. M. Sullivan and G. W. Briscoe, as defendants, agreed upon the respondent, James S. Twyford, an attorney of the Oklahoma City bar, to preside in the ejectment case as special superior court judge. Both sides, according to the pleadings in the case, are claiming title to the land involved. After the issues were made up, and on the 26th day of May, 1913, the defendant Sullivan, under the title and style of the ejectment case, filed a written motion in the superior court, praying for the court to issue a writ of peremptory mandamus against Thomas E. Kirby, one of the petitioners herein, as clerk of the district court of Oklahoma county, to compel him to file and enter upon the records of the said district court a certain described judgment, alleged to have been rendered by one P. C. Hughes, as special judge of the said district court, and this motion is supported by a lengthy affidavit reciting the facts upon which said Sullivan claimed he was entitled to the writ of mandamus against Thomas E. Kirby. For the purpose of this decision we will treat the motion for the mandamus, and affidavit attached thereto, as a proper petition in form for a writ of mandamus. In the application for the mandamus, Sullivan, as the sole petitioner therein, in substance, alleged that Thomas E. Kirby was, at all times therein mentioned, the clerk of the district court of Oklahoma county; that as such clerk he

had called an election, under the statutes, for the purpose of choosing some member of the bar as special district judge to try a case in the district court, No. 11,054, wherein Sullivan was plaintiff, and the Watch Tower Bible and Tract Society, a corporation, Robert H. Hirsh, J. Adam Bohnet, Albert Williamson, Florence Rodman, and N. S. Sherman were defendants; that at such election one P. C. Hughes was elected special district judge of said district court; that said case was tried before said P. C. Hughes, presiding as special judge, and decided in favor of the plaintiff Sullivan on April 24, 1912; that the issue involved in that case in the district court was the title to the land involved in this ejectment case in the superior court, and that said P. C. Hughes rendered a judgment, and signed a journal entry, adjudging and decreeing the title to said land in the plaintiff Sullivan; that Kirby, as clerk, refused and declined to enter said judgment of record; that it was the ministerial and mandatory duty of the said Kirby, as clerk, to enter said judgment of record; that said judgment had not been appealed from, and was final and conclusive between the parties and their privies; Sullivan also alleged in his petition for the writ of mandamus that it was necessary to have the Hughes judgment entered of record in order that he might introduce it in evidence in support of a plea of *res adjudicata* in defense to the ejectment suit in the superior court. Counsel for the plaintiff Hirsh in the ejectment case seasonably objected to the superior court entertaining jurisdiction in the matter of the application for a mandamus against the clerk of the district court, on the ground that the superior court had no jurisdiction over the records of the district court, and, also, on the ground that the respondent Twyford, as special judge of the superior court, had no jurisdiction to hear and determine any case other than the ejectment case. On June 16, 1913, respondent Twyford, presiding as special judge, overruled the objections of counsel for plaintiff Hirsh, and set the application for the writ of mandamus down for hearing on June 20, 1913, thereby holding that the superior court had jurisdiction, and that he, as special judge, has authority to exercise the jurisdiction of the superior court in the matter. The

plaintiff Hirsh then filed an answer, supported by affidavit, in the mandamus proceedings, but in said answer still objected to the jurisdiction of the court, and to Twyford as special judge. Thereafter, respondent Twyford made an order in the nature of an alternative writ, commanding Kirby, as clerk, to appear before him on July 10, 1913, and show cause why he should not place the Hughes judgment of record. Thereupon Hirsh and Kirby filed their petition in this court on July 7, 1913, for writ of prohibition to restrain said superior court, and J. S. Twyford as special judge thereof, from further proceeding in the mandamus case against Kirby as clerk.

*James L. Brown, John H. Wright,* and *J. S. Ross,* for petitioners.

*Solon W. Smith,* for respondent Twyford.

*P. M. Sullivan, pro se.*

RAMSEY, Special Justice (after stating the facts as above). The writ of prohibition is a prerogative writ of ancient origin and should be used with caution and forbearance for the furtherance of justice, and for securing order and regularity in and among inferior tribunals where there is no other adequate remedy. It is an extraordinary judicial writ issuing out of a court of superior jurisdiction and directed to an inferior tribunal for the purpose of preventing the inferior tribunal from usurping a jurisdiction with which it is not legally vested. It is a remedy afforded by the common law to correct encroachments of jurisdiction by inferior courts, and is used to keep such courts within the limits and bounds prescribed for them by law. The object of the writ being to restrain subordinate judicial tribunals of every kind from exceeding their jurisdiction, its use in proper cases should be upheld and encouraged, since it is of vital importance to the due administration of justice that every tribunal vested with judicial functions should be confined to the exercise of those powers with which it has been by law intrusted. High's Extraordinary Legal Remedies, sec. 762. In *Haskell v. Huston,* 21 Okla. 782, 97 Pac. 982, this court said:

"Prohibition is the proper remedy, where an inferior court assumes to exercise judicial power not granted by law, or is attempting to make an excessive and unauthorized application of judicial force in a cause otherwise properly cognizable by it."

See *A., T. & S. F. Ry. Co. v. Love et al.*, 29 Okla. 738, 119 Pac. 207; *Evans v. Willis, County Judge,* 22 Okla. 310, 97 Pac. 1047, 19 L. R. A. (N. S.) 1050; *A., T. & S. F. Ry. Co. v. Corporation Commission,* 29 Okla. 534, 118 Pac. 263.

The first question is, has the superior court jurisdiction to mandamus the clerk of the district court, a court of concurrent jurisdiction, to spread of record in his court an alleged judgment of the district court? Section 1798 of Rev. Laws 1910 confers upon the superior courts concurrent jurisdiction with the district courts in all proceedings, causes, or matters, and concurrent jurisdiction with the county courts in all civil and criminal matters, except probate proceedings. Section 5335, Rev. Laws 1910, provides that:

"The clerk of each of the courts shall exercise the powers and perform the duties conferred and imposed upon him by the statutes of this state, and by the common law. In the performance of his duties, *he shall be under the direction* of his court." (Italics ours.)

Our statutes make it the duty of the clerk to file and preserve all papers, and enter on the journals of the court the judgments and decrees rendered by his court. *Boynton v. Crockett,* 12 Okla. 57, 69 Pac. 869. The clerk's duties are ministerial, and largely clerical. He is the arm of the court for which he is clerk, and it is his duty to make a record of the proceedings orders, judgments, and decrees of his court, but in so doing he acts as the amanuensis of *his* court, and subject to its control. Record entries are valid only when made under the judicial sanction of his court. 7 Cyc., p. 222. Jurisdiction means the power to hear and determine, and one court of equal and concurrent jurisdiction with another has no jurisdiction to hear and determine what orders, judgments, and decrees shall be entered upon the records of the other court of concurrent jurisdiction. Otherwise there would be an intolerable conflict of authority between inferior courts. Public policy, in furtherance of the due and

orderly administration of justice, requires this court, under the power conferred upon it by section 2, art. 7, of the Constitution authorizing this court to exercise "a general superintending control over all inferior courts, and all commissions and boards created by law" to intercede by its writ of prohibition, and restrain the superior court from a usurpation of jurisdiction over the records of the district court. This seems so obviously sound that the citation of authorities is hardly necessary. Nebraska has a statute providing that the clerk of each district court shall keep a record of the proceedings of the court under the direction of the judge of the court. In *State ex rel. Wilkins v. Le Fevre, Clerk,* 25 Neb. 223, 41 N. W. 184, an application was made to the Supreme Court for an order in the nature of a mandamus to compel the defendant, as clerk of the district court of Brown county, to spread upon the records of that court certain orders alleged to have been made by it. In denying the application the Supreme Court of Nebraska said:

"We have not been cited to any law, either statutory or unwritten, and we know of none, which confers upon the Supreme Court jurisdiction to control or direct the ministerial officers of the district court in the discharge of their duties, which are by law placed under the direct supervision of that court. * * * The clerks of the various courts are under the control and direction of the courts of which they are such clerks, and in the discharge of their duties as such clerks, in all matters wherein the authority to control them is expressly or by implication lodged in such courts, the Supreme Court cannot interfere, unless there is some error or refusal to discharge a duty upon the part of the court itself."

We therefore hold that the clerk of the district court is under the exclusive jurisdiction and control of the district court in regard to the exercise of his official duties with respect to the records and proceedings in that court. Being therefore under the exclusive jurisdiction of the district court, the superior court has no jurisdiction by mandamus or otherwise to direct the clerk of the district court to enter any particular order, judgment, or decree of record in that court.

The clerk of the district court being subject to the exclusive jurisdiction and control of the district court, an effort upon the

part of the superior court to order and direct the clerk of the district court to enter of record or expunge from the record any order, judgment, or decree, is a usurpation of the jurisdiction of the district court. Section 4907, Rev. Laws 1910, provides that the writ of mandamus may be issued by the Supreme Court, or district court, or superior court, or any judge or justice thereof, to any *inferior tribunal*, etc. The superior court has no jurisdiction to issue a writ of mandamus against the district court, and *vice versa*. The clerk of the district court being the arm of that court, and subject to the exclusive control and jurisdiction of the district court in regard to the entry of decrees, orders, judgments, etc., the writ of mandamus from the superior court is in its effect and consequences a mandamus against the district court. However, nothing in this opinion shall be understood as holding that this court is without jurisdiction to order the clerks of inferior courts to make or certify to records, etc., in aid of the appellate jurisdiction of this court.

If a clerk of either court has failed, neglected or declined to enter of record any judgment, order, or decree of that court, the proper remedy is an application to that court for which he is clerk, notice being given to the adverse parties, for an order directing the omitted judgment, order or decree to be entered *nunc pro tunc*. *Boynton v. Crockett*, 12 Okla. 57, 69 Pac. 869, 23 Cyc. 842; *Snyder v. Sherrell*, 7 Ind. T. 35, 103 S. W. 756; *Barringer v. Booker*, 1 Ind. T. 10, 35 S. W. 246; *Jackson v. Latta*, 15 Kan. 217.

Respondents contend that the statute conferring upon the superior court concurrent jurisdiction with the district court operates to confer upon the superior court equal and concurrent jurisdiction with the district court over the clerk of the district court. The statute had no such effect or intent. No man can serve two masters, and neither the clerk of the district court nor of the superior court can serve two separate and distinct judicial tribunals. That one man may be authorized to act as clerk of two or more courts is not disputed, but in such case, his official relation to each court is as separate and distinct as the courts themselves. To hold otherwise would open a field for

war between inferior courts of concurrent jurisdiction, involve the administration of justice in an unending conflict of orders and counter orders, and paralyze the whole machinery of the law.

In *Maclean v. Speed,* 52 Mich. 258, 18 N. W. 397, the Supreme Court of Michigan considered a case involving the following facts as stated by the great Chief Justice Cooley:

"The relator, in an action instituted by him in the superior court of Detroit, recovered against Scripps a considerable judgment. The superior court is a court of jurisdiction in matters of law and equity co-ordinate with that of the circuit courts of this state, and limited only territorially. After the recovery a motion was made by the defendant for a new trial, which was argued to the superior court, and denied. The defendant then removed the case to this court by writ of error, and at the last October term the judgment of the superior court was affirmed. At the present term a motion was made and argued for a rehearing, which was denied. The purpose of these proceedings in this court was, of course, to obtain a new trial. While this was the position of the case, the suit was instituted in the Wayne circuit court. The bill alleges misconduct in the jury in the principal suit, and asks to have the judgment canceled because of it. Though not in terms praying for a new trial, the bill manifestly has that for its purpose, and is as much a bill for a new trial as if that had been the relief expressly prayed."

After stating the facts as above, Chief Justice Cooley said:

"From this statement of facts it will be very evident the circuit judge has made a mistake in assuming jurisdiction of the case, and making orders in it. The matter is not one which, under the circumstances, can come under his cognizance. Other courts have control of the controversy with all its incidents, and have ample competency to do in respect to it whatever may remain to be done. It is a familiar principle that, when a court of competent jurisdiction has become possessed of a case, its authority continues, subject only to the appellate authority, until the matter is finally and completely disposed of; and no court of co-ordinate authority is at liberty to interfere with its action. The principle is essential to the proper and orderly administration of the laws; and, while its observance might be required on the grounds of judicial comity and courtesy, it does not rest upon such considerations exclusively, but is enforced to prevent unseemly, expensive, and dangerous conflicts of jurisdiction and of process. If interference may come from one side, it may

from the other also, and what is begun may be reciprocated indefinitely. The country has witnessed some such conflicts in which federal and state courts of co-ordinate powers have unguardedly or unadvisedly undertaken to hamper or restrain each other's action; and the mischiefs of which such cases are suggestive are quite as likely to arise when courts existing as part of the same system intrude with their process upon each other's authority."

See, also, *Ex parte State ex rel. Wilson* (Ala.) 10 L. R. A. (N. S.) 1129.

The second paragraph of section 9, art. 7, of the Constitution (Williams' Ann. Ed.) authorizes the Chief Justice of the Supreme Court "in case of the illness of the judge elected in any district, or if for any other cause he shall be unable to preside in the district in which he was elected," to designate "any district judge in the state to hold any term of court in said district in lieu of the judge elected to hold the courts of said district." Also, "whenever the public business shall require it, the Chief Justice may appoint any district judge of the state *to hold court* in any district, and two or more district judges may sit in any district separately at the same time." Further, "in the event any judge shall be disqualified for any reason from trying *any case* in his district, the parties to such case may agree upon a judge *pro tempore* to try the same, and if such parties cannot agree, at the request of either party a judge *pro tempore* may be elected by the members of the bar of the district, present at such term. If no election for judge *pro tempore* shall be had, the Chief Justice of the state shall designate some other district judge to *try such case."* Under this provision the Chief Justice may designate another regular district judge to hold a regular term of court in another district, or, "whenever the public business shall require it," the Chief Justice may appoint another regular judge "to hold court in any district," and where the regular judge is disqualified "for any reason from trying *any case* in his district," the Chief Justice may designate another regular judge to try that particular case. Section 5813, Rev. Laws 1910, in making certain provisions of section 9, art. 7, *supra,* operative provides that "in any cause, civil or criminal, pending

in any court of record in this state, if the presiding judge for any legal cause shall be incompetent or disqualified to try, hear, or render judgment in such cause, the parties or their attorneys of record, * * * may agree upon some member of the bar of the district who is not disqualified, * * * to act as a special judge to hear and decide and render judgment in the same manner and to the same effect as such disqualified judge could have rendered, but for his disqualification." Where "some member of the bar of the district who is not disqualified" is agreed upon by the parties, or their attorneys of record "to try, hear, or render judgment in such cause," the jurisdiction and authority of such special judge is limited to the trial and determination of that particular case. The respondent Twyford was chosen by the agreement of parties as special judge to preside in the trial of the ejectment case. His jurisdiction was limited to the trial and determination of that particular case. He had no authority in any other case or to preside in an action subsequently instituted in the superior court, although the latter action may be between the same parties. Although the petition for the writ of mandamus against the clerk of the district court is for the purpose of compelling the enrollment of a judgment which the defendant Sullivan seeks to use as evidence in support of a plea of *res adjudicata* in the ejectment case, yet the mandamus proceeding is a new action independent of the ejectment case. In *Harris v. United States Saving Fund & Inv. Co.,* 146 Ind. 265, 45 N. E. Rep. 328, the Indiana Supreme Court had this question under consideration. In a suit to foreclose a mortgage, the regular judge, being interested, appointed a judge of another circuit as special judge, as provided for by the statutes of Indiana. After decree, plaintiff filed a petition for the appointment of a receiver to take charge of the property included in such decree. The court held that the petition for a receiver was in effect a new suit, for the trial of which the regular judge was authorized to appoint a new special judge, although the first appointment had not been revoked. The court said:

"The first special judge, during his sitting, was not required by any issue then formed to pass upon the question of appointing a receiver. The petition for such receiver, although in aid of the decree originally rendered, was a new invocation of the equity powers of the court, and was an appeal 'to the court, rather than to its judge, or to the special judge who presided in the original suit."

In *Kissel v. Lewis,* 27 Ind. App. 302, 61 N. E. 209, the appellate court of Indiana held that a special judge had no authority to entertain contempt proceedings for the violation of a permanent injunction granted by him in a case he tried as special judge. In *Cruson v. Whitley,* 19 Ark. 99, the court held that a special judge has no authority to preside in a case *originating before him.*

On application for prohibition the only inquiries permitted are whether the inferior court is exercising a judicial power not granted by law, or is attempting to make an excessive and unauthorized application of judicial force in a cause otherwise properly cognizable by it. *McInerney v. City of Denver,* 17 Colo. 302, 29 Pac. 516; *Ex parte Slayton,* 105 U. S. 451, 26 L. Ed. 1066; *State v. Ross* (Mo.) 31 S. W. Rep. 600; *Thomson v. Tracy,* 60 N. Y. 31; 32 Cyc. 629; 16 Enc. Pl. & Pr. 1125. In *Thomson v. Tracy, supra,* the court in referring to the office of the writ of prohibition says:

"It has a proper, but a restricted and limited, office; and it cannot be enlarged so as to bring within its scope and operation questions merely collateral or incidental to its direct purpose, or more or less intimately connected with such purpose and object. It cannot be made a drag net, by means of which all controverted and litigated questions between individual suitors may be brought into court, and tried and determined. * * * It cannot take the place of a writ of error, or other proceeding for the review of judicial action, or of a suit in equity to prevent or redress fraud."

In this proceeding, we shall, therefore, not inquire into either the validity of the Hughes judgment, or any of the other judgments set forth in the record. Obviously, the title to the land involved in the ejectment case cannot be tried on an application for prohibition.

Respondent Twyford moved to dismiss the petition against respondents Sullivan and Briscoe, on the ground that no relief is asked against them, and for the reason that they are improper parties. The motion is overruled. Adverse parties to the case pending in the inferior court are proper parties, in order that they may be heard in defense of the action, or threatened action, of the inferior tribunal in which they are interested. *Havemeyer v. Superior Court,* 84 Cal. 327; 32 Cyc. 625; *Armstrong v. Taylor County Court,* 15 W. Va. 190; *Smith v. Whitney,* 116 U. S. 167, 29 L. Ed. 601; 16 Enc. Pl. & Pr. 1135. Spelling on Injunctions and Extraordinary Remedies, vol. 2, sec. 1747. Whether or not the adverse parties are necessary or indispensable parties presents questions which we deem unnecessary to now decide, and, therefore, proper to reserve for decision when the questions arise.

Preceding the oral argument in this case the respondents moved for a trial by jury, basing their demand upon chapter 17, Rev. Laws 1910. Section 1755, c. 17, requires this court, upon the demand of either party to a cause wherein this court is exercising its original jurisdiction, to impanel a jury and submit to the jury issues of fact "presented properly triable by a jury." Whether or not any issue of fact "properly triable by a jury" can arise in a prohibition proceeding in this court is not decided. However, there is no controverted question of fact in this case properly triable by a jury. In this case this court has arrived at its conclusions from the undisputed facts, and there is, therefore, nothing for a jury to try.

The entry of the alleged Hughes judgment on the records of the district court will very materially affect the interest of the petitioner Hirsh, and the order of the superior court directing the petitioner Kirby to enter the Hughes judgment materially affects his official duties. It clearly appears that petitioners have no other adequate remedy (*A., T. & S. F. Ry. Co. v. Love et al.,* 29 Okla. 738, 119 Pac. 207) and the writ prayed for is granted.

All the Justices concur.

Four of the regular Justices having certified to the Governor their disqualification in this cause, the Governor appointed

the following members of the bar of this court as Special Justices to sit with Mr. Justice Loofbourrow, to wit: Joseph G. Ralls, of Atoka; H. L. Fogg, of El Reno; J. F. King, of Newkirk, and Geo. S. Ramsey, of Muskogee.