Errett DUNLAP, Jr., and A. E. Ewell, Jr., registered property tax paying voters of and in the City of Ardmore, Carter County, State of Oklahoma, Plaintiffs in Error,

v.

Mac Q. WILLIAMSON, Attorney General and Bond Commissioner of the State of Oklahoma, a Municipal Entity; the City Council of the City of Ardmore, Oklahoma; George P. Salvidge, Mayor of the City of Ardmore, Oklahoma; Robert C. Cavins, City Manager of the City of Ardmore, Oklahoma; and Tom H. Hefley, City Clerk of the City of Ardmore, Oklahoma, Defendants in Error.

No. 39590.

Supreme Court of Oklahoma.

Feb. 20, 1962.

Rehearing Denied March 13, 1962.

Gene T. Ritter, Ardmore, for plaintiffs in error.

Andrew B. Riddle, Jr., Ardmore, for defendants in error.

BERRY, Justice.

We will herein refer to the parties to this appeal thus: Errett Dunlap, Jr., and A. E. Ewell, Jr., plaintiffs in error, as "plaintiffs"; the City of Ardmore, defendant in error, as "city"; the City Council of Ardmore, George B. Selvidge, Mayor of Ardmore, Robert C. Cavins, City Manager of Ardmore, and Tom H. Hefley, City Clerk of Ardmore, defendants in error, as "defendants". Mac Q. Williamson, as Attorney General, approved the bond issue in controversy prior to institution of this action. The parties appear to agree that the Attorney General was neither a necessary nor proper party to this action.

In this action, plaintiffs seek to enjoin all of the defendants in error from issuing or selling bonds voted by the electors of Ardmore for the purpose of constructing, equipping and furnishing a public library in Ardmore. From an adverse judgment of the trial court, plaintiffs perfected this appeal.

On the merits, the plaintiffs state that "The gist of this appeal is to determine the question of whether or not an election can be upheld when the ballot, proclamation, and published ordinance and the conditions recited in the ballot, election proclamation and published ordinance are contrary with the terms of the ordinance passed by a city commission relating to an election on the question of the issuance of municipal bonds." City argues that this is the sole issue. Plaintiffs contend further that the trial court erred in not rendering judgments against the defendants who were admittedly in default at the time the case was called for trial. We will first consider the last-mentioned contention.

Upon the case being called for trial, plaintiffs directed the trial court's attention to the fact that upon defendants' demurrer to their petition being overruled, the defendants were given time within which to answer; that defendants failed to file an

answer within the time granted and that they were then in default. Plaintiffs moved for a default judgment as to defendants, which motion was denied. Plaintiffs urge that in doing so the trial court erred and that we should direct the trial court to enter a default judgment against defendants.

In denying the mentioned motion, the trial court stated in substance that defendants were sued as officers and agents of the City; that a judgment herein would bind City and therefore bind defendants. It appears that such is the rule in some jurisdictions. See 64 C.J.S. Municipal Corporations § 2162e, p. 992. We are, however, of the opinion that in an action such as this, it is proper and advisable to make the officers or agents of a city who are charged with the duty of issuing and perfecting a sale of bonds, parties defendant. We suggest that if this is done, the court will be in a better position through possible contempt proceedings to enforce compliance with a judgment granting an injunction. For authority, see last citation.

Our opinion in the last-mentioned particulars does not lead us to conclude that we should direct the trial court to enter judgment enjoining defendants. To do so would, in effect, defeat the rights of the city and the will of electors. This we decline to do.

The facts bearing upon plaintiffs' remaining contention can be summarized as follows:

The City Council enacted a resolution (denominated "Ordinance No. 1166") which reads in part thus:

"WHEREAS, it is deemed advisable by the City of Ardmore, State of Oklahoma, to acquire a site for and construct, equip and furnish a Public Library Building to be owned exclusively by said City; and

"WHEREAS, the estimated amount necessary for such purpose is Two Hundred Eighty Thousand ($280,000.-00) Dollars; and

"WHEREAS, there are no funds in the treasury for such purpose and power is granted said City by Section 27, Article 10 of the Constitution and Laws of the State of Oklahoma to issue bonds to provide funds for such purpose, provided the same be authorized by the qualified property tax paying voters thereof, voting at an election held for that purpose,

"NOW THEREFORE BE IT ORDAINED by the Mayor and Board of Commissioners of the City of Ardmore, State of Oklahoma:

"Section 1. That the Mayor be and he is hereby authorized and directed to call a special election to be held in said City on the 24th day of April, 1956, for the purpose of submitting to the qualified property tax paying voters thereof the following Proposition:

"'Shall the City of Ardmore, State of Oklahoma, incur an indebtedness by issuing its negotiable coupon bonds in the sum of Two Hundred Eighty Thousand ($280,000.00) Dollars to provide funds for the purpose of acquiring a site for and constructing, equipping and furnishing a public library building to be owned exclusively by said City, and levy and collect an annual tax, in addition to all other taxes, upon all the taxable property in said City sufficient to pay the interest on said bonds as it falls due, and also to constitute a sinking fund for the payment of the principal thereof when due, said bonds to bear interest at not to exceed the rate of three per centum per annum, payable semi-annually, and to become due serially within ——— years from their date?' "

It was further provided in the resolution that the call for an election be by proclamation, signed by the Mayor, which should set forth the proposition to be voted on, the number and location of polling places, etc. and that an emergency existed.

The resolution was purportedly published in a local newspaper. The resolution as

published was altered and changed in that the last portion of the last above quoted matter read "said bonds to bear interest at not to exceed the rate of *four* per centum per annum, payable semi-annually, and to become due serially within *twenty* years from their date." The alterations and changes are underscored.

It appears that the identity of the person or persons who made the alterations is unknown. It further appears that while the City Council did not ratify the alterations, no member of the Council voiced an objection to same.

The "Election Proclamation" issued by the Mayor and attested to by the City Clerk conformed to the resolution enacted by the City Council in all respects except as to the maximum interest rate on the bonds and the time within which the bonds would mature. In brief, the proclamation followed the published resolution in said particulars and not the resolution as adopted by the City Council. It is not contended that the proclamation was defective in any other particulars.

It stands admitted that at the election which was duly and regularly conducted pursuant to the proclamation, the bond issue carried.

Plaintiffs contend that the resolution was in fact an ordinance; that it was not published as by law provided and for said reason never became effective and is in fact null and void. This contention would probably be well taken if the City Council in fact enacted an ordinance but not if it enacted a resolution.

The pertinent portion of the applicable statute (11 O.S.1951 § 61) reads as follows:

"Whenever the council of any city or the board of trustees of any incorporated town, shall deem it advisable they may, by *resolution or ordinance*, authorize the mayor or president of the board of trustees to call a special election for the purpose of submitting to the qualified electors the question of the issuance of the bonds of said city or town of the granting of any fran-

chise or for any purpose other than the election of officers. The mayor or the president of the board of trustees shall thereupon issue a proclamation calling such election and shall set forth therein the proposition or propositions to be voted on at such election, \* \*" (emphasis supplied).

■ The terms "resolution" and "ordinance" are explained in 62 C.J.S. Municipal Corporations § 411, page 784, 786, thus:

"Resolution. While the terms 'resolution' and 'ordinance' have been used interchangeably, and the term 'resolution' has been held to be the equivalent of the term 'ordinance,' a resolution generally is less solemn and formal than an ordinance. A resolution has also been distinguished from an ordinance in that an ordinance is a continuing regulation, a permanent rule of conduct or government, while a resolution ordinarily is an act of a special or temporary character, not prescribing a permanent rule of government, but is merely declaratory of the will or opinion of a municipal corporation in a given matter, and in the nature of a ministerial or administrative act, and is not a law. \* \* \*"

■ The enactment of the City Council did not purport to be a permanent rule or law for the conduct of government or business, and to the contrary, purported only to declare the thought and wishes of the City Council as to the necessity of submitting to the electors a proposed bond issue for the construction of a library. Moreover, the wording of the resolution as denoted by use of the word "Whereas" in the first three grammatical paragraphs of same tends to show that the enactment was intended as a resolution. We are, therefore, of the opinion that the enactment was a resolution and not an ordinance.

■ Plaintiffs have not cited nor has our research led us to a statute that requires the publication of a resolution enacted by the governing body of a city. In

our opinion, validity of the resolution did not depend upon publication of same. At p. 817, § 427b, 62 C.J.S. Municipal Corporations this is said:

> "Only such ordinances or resolutions or acts of the council as are within the plain provisions of the statute or charter requiring publication need be published. Accordingly, a mere order or decree, or a resolution not in the nature of an ordinance, need not be published. * * *"

■ To our way of thinking, the only vice in the proceeding relating to the bond election was failure to follow in the election proclamation the directive of the resolution concerning the maximum rate of interest that the bonds should bear and the period within which same should mature. For reasons hereafter stated, we do not believe that failure in said particulars vitiated the election.

No statute has been called to our attention nor have we found one, which provides that the resolution or ordinance of the governing body of a city authorizing a bond election proclamation, or a proclamation issued pursuant thereto shall state the maximum amount of interest that shall be paid on the proposed bonds or which provides the maximum period within which such bonds shall mature. In Oklahoma Utilities Co. et al. v. City of Hominy et al., 168 Okl. 130, 31 P.2d 932, it was stated that a proclamation or ordinance to determine whether a municipality should issue bonds to acquire a light and power plant need not state date of maturity of the proposed bonds. At p. 511, § 1916b, 64 C.J.S. Municipal Corporations, it is stated that "In the absence of a constitutional requirement, a bond issue is not illegal because neither the statute authorizing it nor an ordinance passed pursuant thereto specifies the rate of interest to be charged."

■ As reflected by 62 O.S.1951 § 354, the Legislature contemplated that the rate of interest on bonds be determined by competitive bidding. It was no doubt thought that this would result in bonds being sold at the lowest possible interest rate. While the maximum rate of interest payable on municipal bonds is fixed by statute, as is the maximum period in which bonds shall mature, plaintiffs do not claim that an interest rate of 4% or that the matter of providing that bonds shall mature in 20 years, violates any statute.

■ This is not a case where it is sought to enjoin a proposed election because of the Mayor's failure to follow the directive of the City Council. To the contrary, it is a case where it is sought to, in effect, set at naught the affirmative vote of a majority of the electors on a proposition that was in all things regular and proper save the Mayor's failure to follow literally the directive of the City Council. We do not believe that under the facts of this case the Mayor's failure in said particular served to vitiate the election. As we read and understand precedent, an election such as that before us will not be declared invalid for insubstantial irregularities where the electors had notice of the election and understood the proposition submitted to them. In the first portion of the second paragraph of the syllabus to Hughes et al. v. City of Sapulpa, 75 Okl. 149, 182 P. 511, this was said:

> "Irregularities which do not tend to affect results are not to defeat the will of the majority. The will of the majority is to be respected, even when irregularly expressed. * * *"

To the same general effect see City of Ardmore et al. v. State ex rel. Best, 24 Okl. 862, 104 P. 913; Ruth v. Oklahoma City et al., 143 Okl. 62, 287 P. 406; Ratliff et al. v. State ex rel. Woods, Co. Atty., 79 Okl. 152, 191 P. 1038, and 43 Am.Jur. "Public Securities and Obligations", Sec. 84, p. 339.

Affirmed.

WILLIAMS, C. J., and DAVISON, HALLEY, JOHNSON and JACKSON, JJ., concur.

IRWIN, J., concurs in result.