John A. UMHOLTZ and Clarence Beard, Appellees,

v.

CITY OF TULSA, Oklahoma, a Municipal Corporation, and Jack Purdie, Chief of Police, Appellants.

No. 48401.

Supreme Court of Oklahoma.

May 24, 1977.

Phil Frazier, Tulsa, for appellee John A. Umholtz.

Frank M. Hagedorn, Tulsa, for appellee, Clarence Beard.

Waldo F. Bales, City Atty., by Imogene Harris, Asst. City Atty., Tulsa, for appellants.

DAVISON, Justice:

Appellant, City of Tulsa, appeals from the granting of a writ of prohibition by the District Court of Tulsa County, which prohibited the City from suspending two officers of that City's police force without providing the officers with a presuspension review and an opportunity to be heard.

The City attacks the granting of the writ of prohibition on four grounds:

1. Prohibition was inappropriate because it prohibited an administrative or ministerial act, and not a judicial or quasi-judicial act.

2. Prohibition was inappropriate because there was an adequate remedy at law.

3. The court erred in requiring the city to utilize procedures approved by the Board of Commissioners in a resolution, before suspending, for approval of the procedures in a resolution did not have the effect of law.

4. Even assuming the procedures set forth in the resolution of the Board of Commissioners were law, the City substantially complied with the procedures set forth in the resolution.

The facts out of which the controversy arose are as follows: On July 17, 1974, John Umholtz and Clarence Beard, plainclothes officers of the Tulsa police force, who at the time were driving an unmarked car, attempted to stop the car of a young married couple who were on their way to the maternity ward of a Tulsa hospital. In the process of attempting to stop the vehicle, a scuffle allegedly took place, and one of the officers discharged a firearm.

Several complaints were filed against the officers on the day of the incident, and the Internal Affairs Division of the Tulsa Police Department conducted an investigation. On August 28, 1974, more than a month after the incident, both officers were notified that they were being suspended without pay. Officer Umholtz was suspended for a period of ten days, and Officer Beard was suspended for a period of twenty days. Shortly after being notified of their suspension, the officers went to District Court seeking a writ of prohibition, which was subsequently granted. In granting the writ, the court prohibited the City from suspending plaintiffs without granting to them, at a fixed time and place, an opportunity to review and rebut any citizen's complaint made against them and to be heard, and further prohibited the withholding of plaintiffs' pay for the period of suspension.

In its finding of facts, the District Court found that the Board of Commissioners of Tulsa had passed a resolution in 1973 for the purpose of handling citizens' complaints against police officers and provided an investigative procedure for handling those complaints. The resolution provided a procedure whereby officers would be given notice of a complaint made against them and a time and place arranged to review the complaint. Among other things, the court also found that the administrative office of the Police Department of the City of Tulsa failed to comply with the aforesaid procedure, set forth in the resolution prior to suspending the plaintiffs.

## I

■ A writ of prohibition is an extraordinary remedy which is generally inappropriate unless three elements[1] are present—these elements are:

1. A court, officer, or person has or is about to exercise judicial or quasi-judicial power.

2. The exercise of said power is unauthorized by law.

3. And the exercise of that power will result in injury for which there is no other adequate remedy.

Appellant's first attack upon the issuance of the writ asserts that the writ should not have been issued because no judicial or quasi-judicial powers were being exercised by the City, as the act of suspension was an administrative or ministerial act. We do not agree.

In *Gray v. Board of County Commissioners*, Okl., 312 P.2d 959 (1957), this Court stated:

"A quasi-judicial duty is one lying in the judgment or discretion of an officer other than a judicial officer."

In *Thompson v. Amis*, 208 Kan. 658, 493 P.2d 1259 (1972), the Supreme Court of Kansas set forth a definition of "quasi-judicial" which we cite with approval. At page 1263 of that decision, the Kansas Court stated:

"* * * quasi-judicial is a term applied to administrative boards or officers empowered to investigate facts, weigh evidence, draw conclusions as a basis for official actions, and exercise discretion of [a] judicial nature."

■ Officer Umholtz and Officer Beard were not summarily suspended. Rather, they were suspended, an investigation was conducted by the Police Department, and it was only after such investigation that the decision to suspend them was made. Under these facts, we hold that the Department, in suspending the officers, was engaged in a quasi-judicial function and exercising a quasi-judicial power.

## II

Having determined that the power being exercised by the Police Department was quasi-judicial in nature, we consider whether the City's exercise of the quasi-judicial power was authorized. In discussing this issue, we will divide our analysis into two portions. First, we will discuss the City's power under its Charter and under a resolution of the City's Board of Commissioners. Secondly, we will discuss the Constitutional requirements of Due Process.

Section 8, Chapter 16, of the Charter of the City of Tulsa provides:

1. See e. g., *Hirsh v. Twyford*, 40 Okl. 220, 139 P. 313 (1913), in which this Court stated:
 "The writ of prohibition is a prerogative writ of ancient origin, and should be used with caution and forbearance for the furtherance of justice, and for securing order and regularity in and among inferior tribunals, where there is no other adequate remedy. It is an extraordinary judicial writ, issuing out of a court of superior jurisdiction, and directed to an inferior tribunal, for the purpose of preventing the inferior tribunal from usurping a jurisdiction with which it is not legally vested. It is a remedy afforded by the common law to correct encroachments of jurisdiction by inferior courts, and is used to keep such courts within the limits and bounds prescribed for them by law. The object of the writ being to restrain subordinate judicial tribunals of every kind from exceeding their jurisdiction, * * *." 139 P. at 315.
 Then in *Hirsh*, we stated:
 "On application for prohibition, the only inquiries permitted are whether the inferior court is exercising a judicial power not grant-

ed by law, or is attempting to make an excessive and unauthorized application of judicial force in a cause otherwise properly cognizable by it."
Also see, e. g., *Watchorn Basin Assn. v. Oklahoma Gas and Elec. Co.*, Okl., 525 P.2d 1357 (1974), in which this Court held that a writ of prohibition cannot be granted when ordinary usual remedies are available.
See also, 63 Am.Jur.2d, Prohibition, § 6, in which the annotators state:
 "* * * The requisites for the issuance of a writ of prohibition have been declared in a number of cases. The relator must show that some court, officer, or person is about to exercise judicial or quasi-judicial power; that the exercise of such power is unauthorized by law, and that it will result in injury for which there is no other adequate remedy. Every one of these three elements is essential and if the relator fails to establish any one of them, the writ will be denied." [Footnotes omitted].

## SECTION 8. SUSPENSION, REMOVAL AND DEMOTION.

"All officers and employees in the classified service shall hold their respective positions during good behavior regardless of changes of City Officials or City Administrations and shall be suspended without pay, demoted or removed from the same only for good and sufficient cause.

Persons in the classified service who are suspended without pay for more than ten (10) days, removed, or demoted, shall be notified of the specific cause thereof in writing within five days thereafter. A copy of such statement of cause shall be filed with the Personnel Director. Within ten (10) days from the receipt of such notice, the person affected may make a written request to the Personnel Director for a hearing before the Commission, and the Commission shall hold a public hearing within twenty (20) days after the filing of the request therefor. If such person shall fail to request a hearing before the Commission as provided herein his suspension without pay for more than ten (10) days, removal or demotion shall be final.

In the hearing upon a discharge or other disciplinary action before the Commission, not less than four members of the Commission shall sit and participate. The City Attorney or one of his assistants shall present the charges upon which the discharge or disciplinary action is based. The Commission shall rule upon the question of admissibility of evidence, competency of witnesses, and any other question of law. The employee may represent himself or be represented by counsel or person of his own choosing. The hearing shall be informal and shall be conducted in accord with the rules of evidence generally followed before administrative tribunals, and without formal or technical adherence to those rules which prevail in a court of law. The burden of proof shall be upon the disciplinary authority from whose action the appeal is taken and no disciplinary action shall be approved unless sustained by a preponderance of the evidence.

If after the hearing before the Commission the person is found to be suspended, removed, or demoted without adequate cause he shall be restored to his former position without loss of pay. If after hearing the evidence, the Commission shall find cause for disciplinary action it may approve or modify the action taken by the disciplinary authority, provided any right of appeal to the Courts shall not be abrogated. It shall be the duty of the Commission to make and render in writing its findings of facts and its decision thereon.

A department head may for misconduct, suspend an employee without pay for a period not to exceed ten (10) days for any one offense and not to exceed twenty (20) days in any calendar year. The department head shall give written notice of such suspension to the Personnel Director. There shall be no appeal from such action by a department head.

No person in the classified service shall be suspended, removed, or demoted because of his race, creed, color, religious or political beliefs or affiliations, except when such person advocates or belongs to an organization which advocates the overthrow of the government by force or violence."

We first note that the Charter provision clearly anticipates and provides for suspension of officers and employees prior to any notice of hearing. Under the Charter provision, Officer Umholtz, who was suspended for ten days, would not be entitled to a hearing either before or after his suspension, while Officer Beard, who was suspended for twenty days, would be entitled to a post-suspension hearing. Nothing in the Charter requires notice and review of a complaint prior to suspension. We thus conclude that the City Charter does not require such notice or review.

█ We next consider the effect, if any, of a resolution passed by the Board of Com-

missioners in 1973.[2] There can be no doubt that the intent of the City was to adopt a

2. The resolution provided:

"A RESOLUTION DECLARING AND APPROVING THE POLICIES AND PROCEDURES OF THE TULSA POLICE DEPARTMENT FOR RECEIVING, INVESTIGATING, RESPONDING TO AND RECORDING COMPLAINTS FILED.

WHEREAS, a proper relationship between the Police and the public they serve, fostered by confidence and trust, is essential to effective law enforcement, and

WHEREAS, members of the Tulsa Police Department must meticulously observe the rights of all people while remaining reasonably free to exercise their best judgment and initiate action in a reasonable, lawful and impartial manner without undue fear of reprisal, and

WHEREAS, the appreciation of this philosophy has caused the Police Department to assume the responsibility of providing a system of receiving, investigating, responding to and permanently recording all complaints filed against any officer, and

WHEREAS, it is deemed to be in the best interest of the public that the policies and procedures relative to such complaints be made known to all citizens of the City of Tulsa and that the City of Tulsa has formally reviewed and strongly endorses those Policies and Procedures.

NOW, THEREFORE, BE IT RESOLVED BY THE BOARD OF COMMISSIONERS OF THE CITY OF TULSA, OKLAHOMA:

Section 1. That the following Policies and Procedures for Receiving, Investigating, Responding To and Permanently Recording all complaints against personnel of the Tulsa Police Department be and the same are hereby adopted:

TULSA POLICE DEPARTMENT
INTERNAL INVESTIGATIONS
PART I—POLICY AND PROCEDURE FOR RECEIVING COMPLAINTS
* * * * * *
PART II—INVESTIGATIONS
A. * * *
B. Officer and Division Commander Notified: Upon receipt of the complaint, Internal Investigators will inform the officer's Division Commander that a complaint has been received against the particular officer(s) under his command, and the nature of the complaint will be discussed. Internal Investigators will notify the accused officer(s) and arrange a date and time to review the complaint.
C. * * *
1. The officer will be questioned by Internal Investigators about his knowledge of the matter or to explain his actions and behavior. After the discussion, Internal Investigators will direct the officer to write a

resolution and not enact an ordinance. The document is termed a resolution, the first

detailed report to the Chief of Police covering all points mentioned in the citizen complaint. This same procedure will be followed concerning all officers possessing information or knowledge pertinent to the complaint.
2. * * *
3. * * *
4. * * *
5. All statements and reports will be analyzed and compared with information obtained from other sources. Polygraph examinations may be given, after first obtaining consent, to both or either the complainant and the officer complained against whenever there is a significant conflict in testimony.
D. Completed Investigations: Internal Investigators shall write a summary report of their investigation and note their conclusions drawn from the available evidence. The summary report shall be attached to the completed file on the investigation and submitted to the Chief of Police. The Chief shall review the evidence and make one of the following determinations:
1. *Sustained.* The complaint or allegation is supported by sufficient evidence.
2. *Not Sustained.* The evidence is insufficient to either prove or disprove the complaint or allegation. This determination does not "clear" the officer or employee.
3. *Exonerated.* The evidence indicated the act or incident complained of occurred; however, the officers or employees actions were justified, proper, and lawful.
4. *Unfounded.* The complaint or allegation is false or did not occur.

The Chief of Police then will decide what action, if any, should be taken. Internal Investigators may be requested to conduct further investigation if all issues are not clearly explained; but if no further investigation is necessary, Internal Investigators will be detached from the Inquiry.

PART III—RESPONSE TO COMPLAINANT AND PERMANENT RECORDATION IN OFFICERS PERSONNEL FILE
* * * * * *
Section 2. That we hereby approve the Policies and Procedures hereinabove set forth and commend the Police Department and the Community Relations Commission for their jointly expended effort in documentation of these Policies and Procedures for the public interest.

Section 3. That this Resolution be spread upon the public records of the City of Tulsa and a copy hereof be delivered to the members of the press for the purpose of informing the residents of the City of Tulsa of its adoption.
* * *."

four paragraphs of the document start with the words "whereas," and the adopting clause reads, "Now, therefore, be it resolved * * *."

■ It is equally clear that the resolution was intended to be nothing more than a public announcement of, and a strong endorsement of procedures for investigating complaints against Police Department officers and employees, which were prepared and provided by the Police Department. The resolution reads in part:

"WHEREAS, it is deemed to be in the best interest of the public that the policies and procedures relative to such complaints [complaints against police officers and employees] be made known to all citizens of the City of Tulsa and that the City of Tulsa has *formally reviewed* and *strongly endorses* those Policies and Procedures." [Emphasis added]

We also note that the resolution provided:

"That we *hereby approve* the Policies and Procedures hereinabove set forth and *commend* the Police Department and the Community Relations Commission for their jointly expended effort in documentation of these Policies and Procedures for the public interest." [Emphasis added]

56 Am.Jur.2d, Municipal Corporations, Etc., § 344 provides:

"The term 'resolution' denotes something less formal than the term 'ordinance'; *generally, it is a mere expression of the opinion or mind of the council* concerning some matter of administration coming within its official cognizance, and provides for the disposition of a particular item of the administrative business of a municipal corporation. It is ordinarily of a temporary character, while an ordinance prescribes a permanent rule of conduct or of government. *A resolution is not a law*, and in substance there is no difference between a resolution, order, and motion." [Emphasis added]

In *Dunlap v. Williamson*, Okl., 369 P.2d 631 (1962), this Court recognized the distinction between a resolution and an ordinance. In that case, quoting from 62 C.J.S. Municipal Corporations § 411, we stated:

"A resolution has also been distinguished from an ordinance in that an ordinance is a continuing regulation, a permanent rule of conduct or government, while a resolution ordinarily is an act of a special or temporary character, not prescribing a permanent rule of government, but is merely declaratory of the will or opinion of a municipal corporation in a given matter, and in the nature of a ministerial or administrative act, and is not a law."

From a reading of the resolution as a whole, we find that the intent of the resolution was to *endorse* and *approve* the procedures provided by the Police Department. We therefore hold that in adopting the resolution, the City's Board of Commissioners was not acting in a legislative capacity, and did not intend to make law.

■ We next consider what effect, if any, the promulgation of the procedural guidelines by the Police Department had upon the conduct of the Department itself. In 1969, the Supreme Court of Minnesota addressed a similar issue in *Wilson v. City of Minneapolis*, 283 Minn. 348, 168 N.W.2d 19 (1969). In that case, a suit was commenced to restrain the City's Superintendent of Police from suspending a police officer. The District Court dismissed the complaint and the Supreme Court held that in view of the City Charter and the Rules of the City's Civil Service Commission, the Superintendent of Police was entitled to suspend a police officer without a formal hearing, regardless of the fact that the Superintendent of Police issued an order requiring a formal hearing to be held before any disciplinary suspension could be imposed. In so holding, the Minnesota Court stated:

"The primary duty of a department head under the Minneapolis City Charter and the city's civil service rules is to further the purposes for which his department was created. He is charged with the duty of maintaining discipline on the part of his subordinates—a respon-

sibility of special importance in the field of law enforcement. The superintendent of police is given the authority and the duty to suspend temporarily those subject to his jurisdiction when in his judgment this is necessary for purposes of discipline. He is *not authorized or required to make the exercise of this function dependent on a 'formal hearing.'* This being so, his announcement of October 13, 1966, [the issuance of the order requiring a formal hearing] so far as the courts are concerned, can be no more than a statement of his intentions with respect to the procedures to be followed when, in his judgment and discretion, the circumstances, considered in light of his obligations as superintendent of police, permit the observance of such formalities." [Emphasis added]

We adopt the rationale used by the Minnesota Court. The reasoning of that court simply stated is: Municipal officials empowered to perform certain acts, cannot themselves limit their powers by imposing restrictions upon the exercise of their power in such a manner as to effect the legality of their actions.

Under the facts before us, the Chief of Police had the power to suspend officers and employees under him without giving presuspension notice and review. Although he may in his discretion choose to give such notice and review prior to suspension, he cannot, by promulgating procedural guidelines, make any suspension action, which does not conform to those guidelines, ineffective.

Accordingly, we hold that the rules promulgated by the Police Department had no effect on that Department's ability to suspend officers or employees.

### III

Lastly, we consider whether the officers' Fourteenth Amendment Constitutional right to Due Process was violated because the officers were not afforded a predetermination hearing. The Due Process Clause of the Fourteenth Amendment provides:

"[N]or shall any State deprive any person of life, liberty, or property, without due process of law * * *."

While the facts before us suggest that a property interest might be present, there is no suggesting that any interest in life or liberty is involved.

In *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), the United States Supreme Court stated:

" 'Liberty' and 'property' are broad and majestic terms. They are among the '[g]reat [constitutional] concepts * * * purposely left to gather meaning from experience. * * * [T]hey relate to the whole domain of social and economic fact, and the statesmen who founded this Nation knew too well that only a stagnant society remains unchanged.' *National Ins. Co. v. Tidewater Co.,* 337 U.S. 582, 646, 69 S.Ct. 1173, 1195, 93 L.Ed. 1556, 1596 (Frankfurter, J., dissenting). For that reason, the Court has fully and finally rejected the wooden distinction between 'rights' and 'privileges' that once seemed to govern the applicability of procedural due process rights. The Court has also made clear that the property interests protected by procedural due process extend well beyond actual ownership of real estate, chattels, or money." [Footnotes omitted] 408 U.S. at 571–72, 92 S.Ct. at 2706.

*Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976), a former police officer brought an action against the Chief of Police, City Manager and City of Marion, North Carolina. The officer contended that a City Ordinance which provided that permanent employees may be discharged if they fail to perform work up to the standard of their classification, or if they are negligent, insufficient or unfit to perform their duties, should be read to prohibit discharge for any other reason, and therefore confer tenure on all permanent employees. The officer contended that the ordinance gave all permanent employees, including himself, a "sufficient expectancy of continued employment" to constitute a protected property interest. The court citing *Board*

*of Regents v. Roth,* supra, and *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), stated:

"A property interest in employment can, of course, be created by ordinance, or by an implied contract. In either case, however, the sufficiency of the claim of entitlement must be decided by reference to state law." [Footnotes omitted] 96 S.Ct. at 2077–78.

 The issue before us is whether the Charter of the City of Tulsa gave the suspended officers a sufficient "expectation of continued employment" to constitute a protected property interest. The applicable Charter provision, Section 8, of Chapter 16, quoted above, provided that all employees shall hold their respective positions *"during good behavior* regardless of changes of City Officials or City Administrators and shall be suspended without pay, demoted or removed from the same *only for good and sufficient cause."* This language taken alone would clearly confer a property right in continued employment. However, the same Charter provision which granted the right also expressly provides the procedure to be used when disciplinary actions are taken. This procedure does not require predetermination notice or review; rather, the procedure set forth provided for post-determination review, and no review at all if a suspension without pay is for ten days or less.

If there were no Charter provision, since there is no right to future employment conferred by contract, there would be no property interest in future employment at all. Therefore, an interpretation of the Charter provision, which on one hand provided that employees held their jobs during good behavior and could be dismissed or disciplined for good cause only, and on the other hand limits the procedure to protect that interest in future employment, is essential. We believe there are two viable approaches available in construing such provisions. First, the provision providing for employment during good behavior, viewed wholly apart from the other provisions, could be construed to confer an absolute property right in future employment, which could not, once granted, be deprived of due process protections. Secondly, the provisions could be construed as a whole to confer a limited and not an absolute right—limited by the procedural mechanism for enforcement.

In *Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974), the United States Supreme Court was faced with a similar question. *Arnett,* involved the discharge of an employee of the Office of Economic Opportunity without a prior hearing. The discharged employee argued that he was constitutionally entitled to a pretermination evidentiary hearing. The employee alleged that infringements of both property and liberty were present. The statute being interpreted in *Arnett,* supra, provided:

"[N]o person in the classified civil service of the United States shall be removed therefrom except for such cause as will promote the efficiency of said service and for reasons given in writing, and the person whose removal is sought shall have notice of the same and of any charges preferred against him, and be furnished with a copy thereof, and also be allowed a reasonable time for personally answering the same in writing; and affidavits in support thereof; but no examination of witnesses nor any trial or hearing shall be required except in the discretion of the officer making the removal, and copies of charges, notice of hearing, answer, reasons for removal, and of the order of removal shall be made a part of the records of the proper department or office, as shall also the reasons for reduction in rank or compensation; and copies of the same shall be furnished to the person affected upon request, and the Civil Service Commission also shall, upon request, be furnished copies of the same. . . ." [Quoted from 416 U.S. at 150, 94 S.Ct. at 1642].

Reasoning from the statute, the Supreme Court, in a plurality opinion, stated:

"Where the focus of legislation was thus strongly on the procedural mechanism for enforcing the substantive right

which was simultaneously conferred, we decline to conclude that the substantive right may be viewed wholly apart from the procedure provided for its enforcement."

Then, citing cases for the proposition that it is an elemental rule of Constitutional Law that one may not retain the benefits of an act while attacking the constitutionality of one of its important conditions, the Court observed that that rule had been unevenly applied in the past. After making the observations, the Court stated:

"We believe that at the very least it gives added weight to our conclusions that *where the grant of a substantive right is inextricably intertwined with the limitations on the procedures which are to be employed in determining that right, a litigant in the position of appellee must take the bitter with the sweet.*" [Emphasis added]

In *Bishop v. Wood,* supra, a majority of the Supreme Court appears to have adopted the rationale first announced in *Arnett,* supra. In *Bishop v. Wood,* the Court upheld the interpretation giving a city ordinance by the United States District Court and the Court of Appeals for the Fourth Circuit, which held that under the ordinance in question, an employee held his position at the will and pleasure of the city. The ordinance being construed reads:

"A permanent employee whose work is not satisfactory over a period of time shall be notified in what way his work is deficient and what he must do if his work is to be satisfactory. If a permanent employee fails to perform work up to the standard of the classification held, or continues to be negligent, inefficient, or unfit to perform his duties, he may be dismissed by the City Manager. Any discharged employee shall be given written notice of his discharge setting forth the effective date and reasons for his discharge if he shall request such a notice."

We adopt the rationale first announced in *Arnett,* supra, for we believe that legislative intent can be more accurately found by construing laws as a whole. We do not believe the intent of the City of Tulsa can be accurately determined by construing the language giving the "substantive right" wholly apart from the procedural language in the Charter provision.

Applying this rationale to the Charter provision before us, we hold that the provision granted a property right which was *defined* and *limited by* the procedural language of the provision. We further hold that the *"limited property right"* of an *"expectancy of continued employment"* did include the expectancy of a demotion, removal or suspension *without* a predetermination notice or hearing. We further hold that such a "limited property right" is not sufficient to entitle an employee of the City to the protection of the Due Process Clause of the Fourteenth Amendment. In so holding, we note that the City was under no obligation to confer any right upon its employees, that in choosing to confer some right, the City had the option of conferring an absolute right or a limited right. The clear language of the Charter provision indicates that the City chose to give a *limited right* —we will not construe the language of the provision to alter the City's clear intent.

While it is undoubtedly true that those possessing this "limited right" have a different expectation than those granted an unlimited right in "an expectation of continued employment," we do not believe that individuals who possess a limited right anticipate disciplinary action "for no reason at all." Accordingly, those possessing a limited right in an expectation of continued employment should be accorded minimal procedural protection. Although such rights are not protected under the Due Process Clause of the Fourteenth Amendment, we hold that Article 2, Section 7 of the Oklahoma Constitution affords minimal procedural protection to persons who by contract or law have a limited right to hold their jobs or to be free from discipline "unless good cause is shown." Those granted such a right have a "minimal expectation of security" based upon the expectation that the employer will engage in an honest inquiry and employ job related criteria in disciplining or terminating employees.

One of the functions of this State's Constitution Due Process Clause is to protect citizens against arbitrary acts of the state which destroy or adversely affect private property interests. One authority, who views the protections offered by due process as protections which increase or decrease depending on the importance of the right protected—the greater the right, the more protection afforded, suggests that the "minimal protection" that can be afforded in job security cases is a right to receive a meaningful explanation of what is being done to the individual.[3]

Requiring a decision maker to adequately explain the basis for his decision is not a new device for protecting citizens from arbitrary, capricious acts of the decision maker. In *Dunlop v. Bachowski*, 421 U.S. 560, 95 S.Ct. 1851, 44 L.Ed.2d 377 (1975), the United States Supreme Court, in construing the Labor Management Reporting and Disclosure Act of 1959, required the Secretary of Labor to supply union members with a "reasons statement" explaining his decision not to file an action on behalf of a candidate for a union office.

Although it can be argued that the mere obligation to provide a "reasoned explanation" would fail to adequately protect against the possibility of arbitrary treatment, we are convinced that such a required statement would minimize arbitrary actions. We believe that such a requirement will minimize arbitrary behavior because:

(1) The formality of having to provide a detailed written statement of reasons for a particular decision is itself likely to deter bad faith dealings.

(2) Many administrators will no doubt be uneasy about the consequence of committing themselves in writing to a trumped-up rationale, if only because of the possibility of adverse publicity.

(3) In many large bureaucracies there are likely to be internal controls such as a requirement of clearance with a disinterested high level official.

(4) Situations in which termination or discipline resulted because of slipshod procedures, rather than arbitrariness, will be lessened because of the obligation to provide a reasoned explanation.[4]

Of course, the requirement of a "rational explanation" will have little meaning unless there is a vehicle for enforcing that obligation. Without some form of judicial review, the requirement of providing a rational explanation would offer little protection, for unless the reasons given for disciplinary action or termination are subject to review, the agency involved may provide little more than "lip service." Conversely, when agencies know that the reason given for the decision to terminate or discipline an employee is to be reviewed, they are more likely to make their decisions with greater deliberation. We think a judicial review similar to a review discussed in *Dunlop v. Bachowski*, supra, will offer the necessary protection, yet at the same time not overburden courts nor overemphasize the role of the court. In *Dunlop*, the scope of the review outlined was confined to an examination of the "reasons statement" itself—*the court's determining from the statement, without more, whether the decision of the agency is so irrational as to render the decision arbitrary and capricious.* The review did not extend to a review of the factual basis for the decision. In short, if the court concludes that there is a rational and defensible basis stated in the "reasons statement", the matter should be ended.[5] Although no formal detailed finding

---

**3.** Rabin, Robert L., "Job Security and Due Process: Monitoring Administrative Discretion Through a Reason Requirement", 44 U.Chi.L. Rev. 60 (1976).

**4.** See *Rabin,* supra, 44 U.Chi.L.Rev. 60 at 86.

**5.** This limited review, in which the court examines the "reasons statement" and not the facts behind it, is to be used *only* in determining whether the minimal procedural due process protection, outlined above, has been afforded. This limited review, to be used in determining the procedural due process issue, does not affect the court's power to consider the facts behind the "reasons statement", when the court is properly considering substantive issues.

26

of facts is required in the "reasons statement", in order to facilitate review, the decision making agency must inform the employee of the essential facts upon which the decision is made, together with the grounds for making the decision.

We believe that a right to an adequate explanation in the form of a "reasons statement", coupled with the right of a limited review, is a procedural device which can be effective in protecting citizens' "limited property rights in future employment."

Having held that the police department had the power to discipline the two appellee police officers without affording them predetermination notice or hearing, and having held that such action does not violate the officers' right to due process under the Fourteenth Amendment of the United States Constitution, we hold that the trial court erred in prohibiting the City from suspending the officers without first affording them with notice and an opportunity to be heard.

Accordingly, we reverse the decision of the trial court, and by order of this Court set aside and dissolve the writ of prohibition granted by the trial court. In so doing, we remand the matter to the trial court to consider whether the officers have received a written, adequately reasoned explanation for the department's action. If a written explanation has been provided, the court must rule on its adequacy, limiting its scope of review as defined in this opinion. If the explanation, on review, is found to be adequate, the decision of the police department must be affirmed.

REVERSED AND REMANDED WITH INSTRUCTIONS.

LAVENDER, V. C. J., and WILLIAMS, BERRY and DOOLIN, JJ., concur.

HODGES, C. J., concurs in result.

BARNES, J., concurs in part and dissents in part.

IRWIN and SIMMS, JJ., dissent.