777 F.2d 567
 Garlin M. BAILEY, Plaintiff-Appellant,
v.
Inez KIRK, individually and in her official capacity as City
Manager for the City of Sand Springs, Oklahoma; the
Personnel Board for the City of Sand Springs, Oklahoma;
W.B. Breisch, individually and in his official capacity as
Chairman of the Personnel Board for the City of Sand
Springs, Oklahoma; Jerry Tinsley, individually and in his
official capacity as member of the Personnel Board for the
City of Sand Springs, Oklahoma; Johnny Loughridge,
individually and in his official capacity as member of the
Personnel Board for the City of Sand Springs, Oklahoma;
Lloyd Watkins, individually and in his official capacity as
member of the Personnel Board for the City of Sand Springs,
Oklahoma; Bill Pennifold, individually and in his official
capacity as member of the Personnel Board for the City of
Sand Springs, Oklahoma; Artie Palk, individually and in his
official capacity as Mayor of the City of Sand Springs,
Oklahoma; David Lundy, individually and in his official
capacity as Vice Mayor of the City of Sand Springs,
Oklahoma; Don Coble, individually and in his official
capacity as Councilman for the City of Sand Springs,
Oklahoma; Sam Childers, individually and in his official
capacity as Councilman for the City of Sand Springs,
Oklahoma; Tom Gilbert, individually and in his official
capacity as Councilman for the City of Sand Springs,
Oklahoma; Barry Hacker, individually and in his official
capacity as Councilman for the City of Sand Springs,
Oklahoma; Kim Tilley, individually and in his official
capacity as Councilman for the City of Sand Springs,
Oklahoma; and the City of Sand Springs, Oklahoma;
Defendants-Appellees.
 No. 82-1417.
 United States Court of Appeals,
Tenth Circuit.
 Nov. 14, 1985.
 
 Frank M. Hagedorn of Hall, Estill, Hardwick, Gable, Collingsworth & Nelson, Tulsa, Okl., and P. Thomas Thornbrugh, Tulsa, Okl., were on the brief for plaintiff-appellant.
 Floyd L. Walker and Laura Frossard of Pray, Walker, Jackman, Williamson & Marlar, Tulsa, Okl., were on the brief for defendants-appellees.
 Before HOLLOWAY, Chief Judge, and McWILLIAMS and BARRETT, Circuit judges.
 HOLLOWAY, Chief Judge.
 
 
 1
 After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. See Fed.R.App. 34(a); Tenth Circuit R. 10(e). The cause is therefore ordered submitted without oral argument.
 
 
 2
 On November 14, 1980, plaintiff Garlin M. Bailey commenced this action against defendants under 42 U.S.C. Sec. 1983, seeking redress for alleged constitutional violations that occurred when he was suspended without pay and demoted from his position as Chief of Police of the City of Sand Springs, Oklahoma. An amended complaint was filed on July 23, 1981, adding a second cause of action averring that plaintiff was forced to resign from employment with the Sand Springs police department on June 7, 1981, due to harassing and discriminatory conduct of officers, agents and employees of Sand Springs. Plaintiff and defendants both made motions for summary judgment; defendants also moved pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss the second cause of action for failure to state a claim on which relief can be granted.
 
 
 3
 The district court denied plaintiff's motion for summary judgment, granted defendants' motions for summary judgment, and dismissed the second cause of action. Plaintiff appeals.
 
 
 4
 * Plaintiff was hired to serve as Chief of Police for the City of Sand Springs, Oklahoma, in January 1974. The parties stipulated that under the city code and Personnel Policies and Procedures Manual of the City of Sand Springs, plaintiff was a "classified" employee who could not be suspended without pay, demoted, or removed from his position except for good and sufficient cause. IV R. 6.[1]
 
 
 5
 In the spring of 1980, problems arose over plaintiff's investigation into alleged misconduct of a police officer suspected of making unauthorized long distance calls from police department telephones. Plaintiff testified by deposition and in his demotion hearing before the Personnel Board that in April 1980 he was dismissed from employment, had a hearing before the Personnel Board, and was reinstated and cleared of charges concerning his investigation of the officer. Plaintiff also testified by deposition that in September 1980 the City Manager, defendant Kirk, ordered plaintiff to reinvestigate the matter and to obtain a copy of the police officer's home telephone bill. Plaintiff testified that he talked with the officer and asked for a copy of his phone bill; the officer responded by stating that he had not made unauthorized calls, that he did not want to give up his personal telephone bill, and that he would not submit the bill to plaintiff without a court order. Plaintiff further testified that as part of the investigation he also spoke with the Assistant Chief of Police, another police officer who had allegedly heard incriminatory statements from the officer under investigation, and the division supervisor of Southwestern Bell; plaintiff stated that he "thoroughly and completely" investigated the matter "as much as [he] possibly could." V R. 27, 34.
 
 
 6
 On September 29, 1980, defendant Kirk, in accordance with a provision in the city code and personnel manual,[2] summarily suspended plaintiff without pay for a four day period, from September 30 through October 3, 1980. In the notice of suspension received by plaintiff, Kirk stated that the suspension was imposed "[b]ecause of your inability to resolve the personnel problem with [the officer accused of making unauthorized calls] satisfactorily to convince me that you could win the decision when it was heard by the Personnel Board." I R. 50. Believing that the suspension was "unfair", plaintiff responded by declining the suspension and requesting a hearing before defendant Kirk and the City Council. Plaintiff testified that Kirk indicated to him that he could go before the City Council to discuss his suspension; plaintiff also testified that he continued to work as Chief of Police during the suspension period. V R. 61, 76.
 
 
 7
 On October 2, 1980, the City Council met in executive session with plaintiff and Kirk. After listening to both parties, the City Council decided that, even though there was a fifty percent chance that Kirk was "wrong" in suspending plaintiff, the rules did not permit an appeal from a four day suspension; the council stated that plaintiff therefore should have taken the suspension "regardless of what the reason was" and that Kirk had no other alternative but to demote him for refusing to accept the discipline imposed. V R. 68-70, 73-74 (April 22, 1981 deposition).
 
 
 8
 On October 6, 1980, Kirk demoted plaintiff to the rank of Lieutenant for his failure to obey the September 29 order of suspension. Kirk stated in the demotion notice that plaintiff's insubordinate conduct was in violation of Sec. 4(B) of the Policies and Procedures of the Sand Springs Police Department and Sec. 510.01 of the Personnel Policies and Procedures Manual of the City of Sand Springs.[3] I R. 52. The notice also said that plaintiff had the right to appeal the decision within ten days to the Personnel Board and that he was being reduced in rank in compliance with Sec. 70(B) of the police department's Policies and Procedures.[4]
 
 
 9
 Upon plaintiff's timely request, a hearing was held before the defendant Personnel Board on October 23-24, 1980. At the hearing the Board employed a new set of procedural rules which it had adopted on October 16, 1980, to govern the format of future meetings. Plaintiff testified by deposition that he was not aware of these changes in the Board's rules and that he received no document prior to the demotion hearing setting forth the new procedures to be followed. V R. 81.
 
 
 10
 At the hearing, one of the arguments plaintiff sought to raise was that his demotion was based on an "unlawful" or improper suspension; plaintiff asserted that he had already been cleared of the charges given as grounds for the September 1980 suspension by the Personnel Board in April 1980. IV R. 104. The Board, however, refused to consider the reasons behind the four day suspension. The Board explained that it was without authority to determine the propriety of the suspension since the city code and Personnel Policies and Procedures Manual of the City of Sand Springs did not provide for appeals of suspensions of less than ten days. IV R. 18, 38, 56-57.
 
 
 11
 The Board also concluded that plaintiff was notified of his suspension on September 29, 1980, and that, "[r]egardless of the reason for suspension," plaintiff "did disobey the order of suspension and conducted himself in an insubordinate manner to the detriment of the Police Department." IV R. 173-74. Although the Board found Sec. 70(B) of the Policies and Procedures of the Sand Springs Police Department inapplicable to this case involving the chain of command between the City Manager and Police Chief rather than relationships within the department, the Board sustained the demotion under Sec. 510.01 of the Personnel Policies and Procedures Manual.
 
 
 12
 On April 30, 1981, Bailey was again suspended. This suspension of five days was stated to be for writing checks without sufficient funds. Bailey was not allowed to appeal this suspension because the city policy provides that there will be no appeal from an action by a department head who suspends an employee for less than ten days.
 
 
 13
 Plaintiff commenced this Sec. 1983 action in November 1980 challenging the constitutionality of his first suspension and demotion in the district court, but continued his employment as Police Lieutenant with the City of Sand Springs.[5] However, plaintiff testified by deposition that the Chief of Police, the City Manager, and other employees of the City of Sand Springs subsequently forced him to resign from the police department on June 7, 1981, through their harassing and discriminatory conduct.[6] V R. 5-8. Plaintiff's amended complaint added a second cause of action for his allegedly forced resignation.
 
 
 14
 The district court denied plaintiff's motion for summary judgment and granted defendants' motions for summary judgment and to dismiss the second cause of action. The court held that plaintiff's suspensions on September 29, 1980, and April 30, 1981, did not implicate property or liberty interests protected by the Due Process Clause and that plaintiff's demotion hearing on October 23-24, 1980, comported with due process. II R. 751-58. The court also concluded that plaintiff's second cause of action involving allegations of "constructive discharge" failed to state a claim for relief under 42 U.S.C. Sec. 1983.
 
 
 15
 In challenging the district court's order, plaintiff presents the following issues on appeal: (1) whether plaintiff was deprived of due process when he was twice suspended from employment under a city ordinance and regulation which did not permit a right of appeal; (2) whether plaintiff was denied due process at the demotion hearing of October 23-24, 1980; and (3) whether plaintiff stated a claim for relief for an alleged "constructive discharge" under 42 U.S.C. Sec. 1983.
 
 II
 The Suspensions
 A. Protected Interests
 
 16
 The city code and Personnel Policies and Procedures Manual of the City of Sand Springs provide that a city employee may be suspended from employment for a period of ten days or less without a right of appeal. The district court upheld the constitutionality of these suspension provisions. Plaintiff argues that the ordinance and regulation are unconstitutional in that they fail to comport with the requirements of due process.[7] See Brief of Appellant 36-44. Plaintiff, however, is entitled to the safeguards of due process only if he can demonstrate that his suspensions implicated a property or liberty interest protected by the Due Process Clause of the Fourteenth Amendment; "if a property or liberty interest is not implicated, '[plaintiff] must settle for whatever procedures are provided by statute or regulation.' " Sipes v. United States, 744 F.2d 1418, 1420 (10th Cir.1984), (quoting Development in the Law--Public Employment, 97 Harv.L.Rev. 1611, 1781 (1984)); see also Rich v. Secretary of the Army, 735 F.2d 1220, 1226 (10th Cir.1984).
 
 1. Liberty Interest
 
 17
 The district court held that plaintiff did not demonstrate his suspensions implicated liberty interests because he failed to show that his reputation or ability to obtain employment was damaged. II R. 757-58. We agree.
 
 
 18
 We have held that to establish a deprivation of a liberty interest, plaintiff must show that the discipline imposed resulted in the publication of information which was false and stigmatizing. Sipes, 744 F.2d at 1421; Asbill v. Housing Authority of Choctaw Nation of Oklahoma, 726 F.2d 1499, 1503 (10th Cir.1984). Plaintiff's liberty interest claim regarding his suspensions on September 29, 1980, and April 30, 1981, falls short of meeting these requirements.
 
 
 19
 First, as to the September 29, 1980, suspension, the reasons given for plaintiff's suspension were not sufficiently stigmatizing to implicate a liberty interest. Plaintiff was suspended for failing to conduct an investigation of a police officer to the satisfaction of his supervisor. This reason is insufficient to call into question plaintiff's good name, reputation, honor, or integrity. See, e.g., Stritzl v. United States Postal Service, 602 F.2d 249, 252 (10th Cir.1979) (characterization of plaintiff as a slow worker with "poor work habits and low productivity" was not sufficiently stigmatizing to implicate a liberty interest); Hadley v. County of Du Page, 715 F.2d 1238, 1245 (7th Cir.1983) (mere charge of mismanagement was insufficient to give rise to a liberty interest claim), cert. denied, 465 U.S. 1006, 104 S.Ct. 1000, 79 L.Ed.2d 232 (1984).
 
 
 20
 Second, as to the April 30, 1981, suspension, plaintiff has failed to allege that the information contained in the letter of suspension was false. Plaintiff in fact conceded in his deposition that the suspension notice accurately indicated that he had issued some checks returned to the payee for insufficient funds. V R. 15. See Lentsch v. Marshall, 741 F.2d 301, 305 (10th Cir.1984); Williams v. West Jordan City, 714 F.2d 1017, 1021-22 (10th Cir.1983); see also Eames v. City of Logan, Utah, 762 F.2d 83, 85-86 (10th Cir.1985).
 
 
 21
 For these reasons, we agree with the district court's holding that the suspensions did not deprive plaintiff of liberty interests to which the protection of due process could attach, and affirm that ruling.[8]
 
 2. Property Interest
 
 22
 Relying on Umholtz v. City of Tulsa, 565 P.2d 15 (Okla.1977), the district court held that under state law plaintiff only had a "limited" property interest concerning his suspensions which was not protected by federal due process guarantees. II R. 751-53. Plaintiff asserts on appeal, however, that under cases such as Bell v. Board of School Commissioners, 450 F.Supp. 162 (S.D.Ala.1978), and Puckett v. Mobile City Commission, 380 F.Supp. 593 (S.D.Ala.1974), he had an unlimited property interest and was entitled to the safeguards of due process as a classified employee who could not be suspended except for cause. Plaintiff argues that Umholtz should not control here because the state court there failed to recognize that "[w]hile the defendant ... may elect not to confer a property interest in public employment, it may not constitutionally authorize the deprivation of such an interest, once conferred, without appropriate procedural safeguards." Brief of Appellant 38-42.
 
 
 23
 At the outset, we agree with defendants' contention that plaintiff's property interest in his employment is created, defined and governed by state law. See Cleveland Board of Education v. Loudermill, --- U.S. ----, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). We believe, however, that in light of recent Supreme Court decisions rendered after Umholtz, the district court's summary judgment on this issue must be set aside.
 
 
 24
 In Umholtz, the Oklahoma Supreme Court had held that city employees in the classified service, who could not be suspended, demoted or removed from a position absent good cause, had only a limited property interest under a city charter provision permitting suspensions of ten days or less without a right of appeal. 565 P.2d at 23. The court relied on the plurality opinion of Arnett v. Kennedy, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974), to hold that "the provision granted a property right which was defined and limited by the procedural language of the provision" and that "such a 'limited property right' is not sufficient to entitle an employee of the City to the protection of the Due Process Clause of the Fourteenth Amendment." 565 P.2d at 24. The court relied on the following language in Arnett:
 
 
 25
 Where the focus of legislation was ... strongly on the procedural mechanism for enforcing the substantive right which was simultaneously conferred, we decline to conclude that the substantive right may be viewed wholly apart from the procedure provided for its enforcement.
 
 
 26
 ....
 
 
 27
 We believe that at the very least it gives added weight to our conclusion that where the grant of a substantive right is inextricably intertwined with the limitations on the procedures which are to be employed in determining that right, a litigant in the position of appellee must take the bitter with the sweet. (Emphasis added).
 
 
 28
 Arnett, 416 U.S. at 152-54, 94 S.Ct. at 1643-44.
 
 
 29
 Since Arnett, however, the Court has emphasized that this view in Arnett garnered only three votes and was specifically rejected by the other six Justices and that the Court has "clearly rejected" this view in subsequent cases. Cleveland Board of Education v. Loudermill, 105 S.Ct. at 1492-94 (citing Vitek v. Jones, 445 U.S. 480, 491, 100 S.Ct. 1254, 1262-63, 63 L.Ed.2d 552 (1980); Logan v. Zimmerman Brush Co., 455 U.S. 422, 432, 102 S.Ct. 1148, 1155-56, 71 L.Ed.2d 265 (1982)). In Loudermill, Justice White wrote for the Court that:
 
 
 30
 In light of these [subsequent] holdings, it is settled that the 'bitter with the sweet' approach misconceives the constitutional guarantee. If a clearer holding is needed, we provide it today. The point is straightforward: the Due Process Clause provides that certain substantive rights--life, liberty, and property--cannot be deprived except pursuant to constitutionally adequate procedures.... "Property" cannot be defined by the procedures provided for its deprivation any more than can life or liberty. The right to due process "is conferred, not by legislative grace, but by constitutional guarantee. While the legislature may elect not to confer a property interest in [public] employment, it may not constitutionally authorize the deprivation of such an interest, once conferred, without appropriate procedural safeguards."
 
 
 31
 Id. (quoting Arnett, 416 U.S. at 167, 94 S.Ct. at 1650 (Powell, J., concurring in part and concurring in result in part)).
 
 
 32
 We conclude that we must now hold that a public employee, who could not be suspended except for cause, had a property interest in continued employment, even though the city's suspension provisions may not provide for a right of appeal. We note that in Umholtz the Oklahoma Court stated that the language in the city charter, which provided that public employees could be suspended without pay, demoted or removed from position only for good and sufficient cause, "taken alone would clearly confer a property right in continued employment." Umholtz, 565 P.2d at 23; (emphasis added); see also Hall v. O'Keefe, 617 P.2d 196 (Okla.1980) (where the court indicated that public employees would have a protected property interest if the applicable Oklahoma statute had provided that public employees could be removed only for "cause" rather than "solely for the good of the service"); accord Vinyard v. King, 728 F.2d 428, 432 (10th Cir.1984) (even though an employee handbook did not provide for review procedures, we concluded that the Oklahoma Court would find a property interest because the handbook stated that a permanent employee could not be discharged without cause); Poolaw v. City of Anadarko, Okla., 660 F.2d 459, 463-64 (10th Cir.1981) (a city charter conferred a property interest in continued employment by providing that city employees could only be discharged for cause).[9] Thus, without the "bitter" part of the manual--permitting suspensions not exceeding 10 days with no appeal--the City's provisions created a property right in continued employment carrying due process protection under Loudermill.
 
 
 33
 We are convinced that the suspensions here implicated a property interest entitled to due process safeguards in light of cases which hold that temporary suspensions without pay are not de minimis and impinge on protected property interests. See, e.g., Hardiman v. Jefferson County Board of Education, 709 F.2d 635, 637 n. 1 (11th Cir.1983) (plaintiff's property interest in employment as a tenured teacher would be implicated by a suspension without pay absent an "extraordinary situation"); Best v. Boswell, 696 F.2d 1282, 1289-90 (11th Cir.) (a two week suspension impinged on a merit system employee's protected property interest), cert. denied, 464 U.S. 828, 104 S.Ct. 103, 78 L.Ed.2d 107 (1983); Louise B. v. Coluatti, 606 F.2d 392, 401-02 (3d Cir.1979) (assuming that plaintiffs had a property interest in public employment, it would be impinged by summary suspensions without pay); Muscare v. Quinn, 520 F.2d 1212, 1215 (7th Cir.1975) (plaintiff's suspension for 29 days without pay was not de minimis and implicated a protected property interest), cert. dismissed as improvidently granted, 425 U.S. 560, 96 S.Ct. 1752, 48 L.Ed.2d 165 (1976) (per curiam); Brunn v. City of Cleveland, 526 F.Supp. 564, 565-66 (N.D.Ohio 1981) (a five day suspension implicated a property interest of a public employee who could only be suspended "for cause" under the city charter); see also Goss v. Lopez, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975) (public school suspensions up to 10 days implicated property interest cognizable under Due Process Clause); but see Wargat v. Long, 590 F.Supp. 1213, 1215 (D.Conn.1984); Warfield v. Adams, 582 F.Supp. 111, 114 (S.D.Ind.1984).
 
 
 34
 Therefore, plaintiff as a classified employee who could not be suspended from employment except for cause, had a property interest which was implicated when he was summarily suspended for a four day period in September 1980 and a five day period in April 1981. We hold that it was error for the district court to rule that plaintiff had only a "limited property interest" in his employment, unprotected from the suspensions by the Due Process Clause.
 
 
 35
 In sum, we uphold the ruling of the district court that no liberty interests were implicated in the two suspensions. However with respect to the property interest claim, we must disagree with the conclusion of the district court that plaintiff had only a "limited property interest" so that his employment was unprotected by the Due Process Clause from the suspensions. District Court's Order at 7. Accordingly, the summary judgment must be reversed with respect to the suspensions and the claim concerning them will be remanded for further proceedings.
 
 III
 The Demotion
 
 36
 The district court ruled, and defendants have not disputed, that plaintiff was a classified employee who was entitled to a hearing before the Personnel Board concerning his demotion to the position of Police Lieutenant. See II R. 6, 9 n. 11.[10] A hearing was in fact held after the demotion on October 23-24, 1980. Therefore, the narrow issue raised here is whether this hearing comported with due process.
 
 
 37
 The district court held that the hearing met the standards of due process because plaintiff did not adequately demonstrate that the Personnel Board acted arbitrarily in upholding the demotion and because plaintiff was afforded procedural due process at the hearing. II R. 754-57. The court reasoned that plaintiff was allowed to testify in his own behalf and call witnesses; both counsel were permitted cross-examination; and plaintiff's counsel was allowed to make a closing argument. Id. at 754-55. Moreover, the court decided that the Board's refusal to consider the reasons behind the September 29, 1980 suspension was proper, given that plaintiff was not entitled to a hearing concerning the factual basis for the suspension under Umholtz v. City of Tulsa, 565 P.2d 15 (Okla.1977), cert. denied, --- U.S. ----, 105 S.Ct. 784 (1985). Id. at 755.
 
 
 38
 Plaintiff contends that the hearing did not comport with due process because (1) members of the Personnel Board demonstrated they were biased against plaintiff; (2) plaintiff was denied the right to confront and cross-examine witnesses and to put on evidence in his defense as it related to the suspension which gave rise to the demotion; and (3) the procedural format of the hearing adopted by the Board on October 16, 1980, denied plaintiff the right to an orderly hearing and to be represented by counsel. Brief of Appellant 28-35.[11]
 
 A. Bias Claim
 
 39
 In addressing plaintiff's claim of bias, we recognize that an impartial tribunal is an essential element of a due process hearing. See Walker v. United States, 744 F.2d 67, 70 (10th Cir.1984); Miller v. City of Mission, Kan., 705 F.2d 368, 372 (10th Cir.1983); Staton v. Mayes, 552 F.2d 908, 913 (10th Cir.), cert. denied, 434 U.S. 907, 98 S.Ct. 309, 54 L.Ed.2d 195 (1977). Plaintiff must, however, make a "substantial showing" of bias to establish that the hearing was unfair and thus violated due process. Corstvet v. Boger, 757 F.2d 223, 229 (10th Cir.1985) (citing Roberts v. Morton, 549 F.2d 158, 164 (10th Cir.1976), cert. denied, 434 U.S. 834, 98 S.Ct. 121, 54 L.Ed.2d 95 (1977)).
 
 
 40
 Plaintiff maintains that the refusal of the Board to inquire into the propriety of the September 29, 1980 suspension as a basis for the demotion demonstrates the Board had made its decision to uphold the demotion before receiving any evidence, or at least raises a question of fact of bias which precludes summary judgment. See Brief of Appellant 14-15, 28-30. Moreover, plaintiff asserts that a statement made by the Chairman of the Board during the hearing, that the Board tended to believe certain testimony of defendant Kirk, indicates the Board had predetermined that the testimony of Kirk would be accepted without question. Id. at 30-31.
 
 
 41
 We conclude that this evidence neither substantially shows the Board was biased nor creates an issue of fact. The Board repeatedly explained throughout the hearing that it was without authority to review the September 29, 1980 suspension. IV R. 18, 37-38, 56-57. These statements did not reflect bias, but rather showed that the Board assumed it was without jurisdiction to determine the propriety of a four day suspension under a city ordinance providing no right of appeal of suspensions not exceeding ten days.[12]
 
 
 42
 Moreover, the Board allowed plaintiff to present a second argument--that he had not acted in an "insubordinate manner" because he never believed he was suspended after representations were made by defendant Kirk that he could ask for a hearing before the City Council. See IV R. 41, 51-52, 76. The Chairman of the Board in fact indicated that this argument had some merit when he stated, "I think there is some argument as to whether [plaintiff] was suspended." IV R. 116. The Board also accepted plaintiff's contention that he could not be demoted under Sec. 70(B) of the Policies and Procedures of the Sand Springs Police Department. See IV R. 68-70, 173. We therefore hold that plaintiff has failed to demonstrate the hearing was unfair due to the bias of members of the Board and affirm the rejection of that claim.
 
 B. Other Claims
 
 43
 Plaintiff contends that the procedural format followed by the Board at the demotion hearing violated due process. We disagree. Under the Board's procedures, plaintiff was permitted to be represented by counsel, to confront and cross-examine witnesses for the City, and to present witnesses on his behalf.[13] We have stated that " 'due process is flexible and calls for such procedural protections as the particular situation demands.' " Rosewitz v. Latting, 689 F.2d 175, 177 (10th Cir.1982) (quoting Morrissey v. Brewer, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972)). In balancing plaintiff's interest in employment against the City's "important interest in efficient functioning of the city machinery which may be impeded by imposing a requirement of adversarial, trial-like hearings for every [disciplined] employee," we conclude that these procedures were sufficient to comport with due process. See Prebble v. Brodrick, 535 F.2d 605, 615-16 (10th Cir.1976).
 
 
 44
 However, plaintiff also argues that he was denied, in effect, the due process right to present evidence in his defense at the hearing. Specifically, plaintiff asserts that by refusing to hear the facts underlying his September 29, 1980 suspension, the Personnel Board would not permit him to demonstrate that his demotion was wrongful because it was based on his refusal to comply with an improper order of suspension. Brief of Appellant 31-33.
 
 
 45
 We recognize that there is authority which indicates that review of a disciplinary decision need not extend to an examination of the factual bases underlying that decision, but rather may be confined to an examination of the statement of reasons given for taking disciplinary action. See Dunlop v. Bachowski, 421 U.S. 560, 572-74, 95 S.Ct. 1851, 1860-61, 44 L.Ed.2d 377 (1975); Rabin, Job Security and Due Process: Monitoring Administrative Discretion Through a Reasons Requirement, 44 U.Chi.L.Rev. 60, 80-93 (1976); but see Chase v. Fall Mountain Regional School District, 330 F.Supp. 388, 399-400 (D.N.H.1971) ("To hold that a superintendent and a School Board need make no inquiry as to the truth or falsehood of the facts underlying the reason proffered for dismissal [of a teacher] would offend the most elemental concepts of justice."). Nevertheless, we conclude that the plaintiff was entitled to a meaningful opportunity to respond to the charges against him. As the Supreme Court has stated, "[t]he fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.' " Mathews v. Eldridge, 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976) (quoting Armstrong v. Manzo, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965). The Court has stressed that the purpose of providing "some opportunity for the employee to present his side of the case" is to aid the employer in reaching "an accurate decision." Loudermill, 105 S.Ct. at 1494-96 (emphasis added).
 
 
 46
 Section 510.01 of the Personnel Policies and Procedures Manual was the provision that was relied on by the Personnel Board in upholding the demotion decision. That ordinance specifically provides that insubordination, as a just cause for disciplinary action, is the "[r]efusal to comply with the proper order of an authorized supervisor." (Emphasis added). Plaintiff was never given the opportunity either in a suspension hearing or in the demotion hearing of October 23-24, 1980, to demonstrate that the September 29, 1980, order of suspension was improper; thus, plaintiff was unable to present one of his two essential defenses at the demotion hearing to rebut the reason of insubordination which was given for his demotion. See IV R. 104.[14]
 
 
 47
 We hold that the record does not establish the absence of any genuine issue as to material facts and entitlement to judgment as a matter of law on the adequacy of plaintiff's opportunity to respond. Accordingly the summary judgment as to the demotion must be reversed and that claim is also remanded for further proceedings.
 
 IV
 Constructive Discharge
 
 48
 Plaintiff's second cause of action against the City alleged that the City "by and through its various officers, agents and employees embarked upon a course of conduct calculated to intimidate and harass" him into resigning from his position with the city police department. I R. 46-47. The district court concluded that this cause of action attempted to assert a claim sounding in "constructive discharge" and sustained defendant's motion to dismiss. The court held that plaintiff failed to state a claim for relief under 42 U.S.C. Sec. 1983 because there was no showing that the alleged actions were done under color of law or deprived plaintiff of any rights, privileges or immunities protected by the Constitution. II R. 758-59. In so holding, the court further noted that it "ha[d] not found a case extending the doctrine [of constructive discharge] to a Sec. 1983 action." Id. at 13 n. 15.
 
 
 49
 Pointing to cases which have extended the doctrine of constructive discharge to Sec. 1983 actions (see, e.g., Reussow v. Eddington, 483 F.Supp. 739, 743 (D.Colo.1980)), plaintiff contends that he did state a valid claim for deprivation of his constitutional rights. Brief of Appellant 45-46. Moreover, plaintiff argues that he should have had an opportunity to demonstrate at trial that the harassment resulting in his forced resignation was approved by city officials in their official capacities under color of law. Id. at 46-47.
 
 
 50
 A motion to dismiss must not be granted "unless it appears without doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Moreover,
 
 
 51
 "[a] motion to dismiss ... admits all well-pleaded facts in the complaint as distinguished from conclusory allegations. Jones v. Hopper, 410 F.2d 1323 (10th Cir.1969), cert. denied, 397 U.S. 991, 90 S.Ct. 1111, 25 L.Ed.2d 399 (1970). The factual allegations of the complaint must be taken as true and all reasonable inferences from them must be indulged in favor of the complainant. Williams v. Eaton, [443 F.2d 422 (10th Cir.1971);] Olpin v. Ideal National Insurance Co., 419 F.2d 1250 (10th Cir.1969), cert. denied, 397 U.S. 1074, 90 S.Ct. 1522, 15 L.Ed.2d 809 (1970)."
 
 
 52
 Fry Brothers Corp. v. Department of Housing and Urban Development, 614 F.2d 732, 733-34 (10th Cir.1980) (quoting Mitchell v. King, 537 F.2d 385 (10th Cir.1976)).
 
 
 53
 In the amended complaint, plaintiff averred that the City "by and through its agents, officers, and employees" embarked on a course of conduct to intimidate and harass him for filing the lawsuit. Plaintiff alleged that city officials had knowledge of the harassment, and "either directed it, acquiesced in it or failed to take any steps to prevent said harassment." I R. 46-47. Plaintiff also alleged that specific acts constituted harassment, and that the wrongful acts were motivated by illwill and malice and that their purpose was to force plaintiff to resign his employment and to withdraw his suit.[15] We must agree that these allegations, if taken as true as we must at this juncture, are sufficient to show action under color of law.
 
 
 54
 Moreover, the courts have generally held that if a plaintiff establishes that he had a protected property or liberty interest of which he was deprived without a due process hearing,[16] his claim that he was forced to resign or was constructively discharged from employment may be actionable under Sec. 1983. See Findeisen v. North East Independent School District, 749 F.2d 234, 236-39 (5th Cir.1984), cert. denied, --- U.S. ----, 105 S.Ct. 2657, 86 L.Ed.2d 274 (1985); Parrett v. City of Connersville, Ind., 737 F.2d 690, 694 (7th Cir.1984), cert. dismissed, --- U.S. ----, 105 S.Ct. 828, 83 L.Ed.2d 820 (1985); McAdoo v. Lane, 564 F.Supp. 1215, 1221 (N.D.Ill.1983); Huff v. County of Butler, 524 F.Supp. 751, 755 (W.D.Pa.1981); Reussow v. Eddington, 483 F.Supp. 739, 742-44 and 745-46 (D.Colo.1980).[17]
 
 
 55
 In Parts II and III we have held that plaintiff had a protected property interest in continued employment with the City. Plaintiff also alleged sufficient facts on which he may establish a liberty interest concerning his claim of constructive discharge. He averred that he "was accused of misappropriation of police property by the police chief even though there were no grounds for said accusations." I R. 46.[18]
 
 
 56
 In sum, we are convinced that plaintiff has sufficiently alleged specific acts of harassment by city officials on which he may prove a valid claim that his employer deliberately made his working conditions so intolerable that he was forced into an involuntary resignation. See Muller v. United States Steel Corp., 509 F.2d 923, 929 (10th Cir.1975) (standard of deliberateness used in considering a claim of constructive discharge); Reussow, 483 F.Supp. at 743 (same). Further, in agreement with the opinions cited, we hold that such a constructive discharge claim may be the basis for relief under Sec. 1983.
 
 
 57
 We therefore conclude that plaintiff did sufficiently aver a claim for relief under Sec. 1983 for an alleged constructive discharge so that the dismissal of that claim on the pleadings was in error.
 
 V
 Conclusion
 
 58
 For the reasons stated, the rulings of the trial court dismissing the liberty interest claim with respect to the suspensions and the demotion are affirmed. In connection with the demotion, the rejection by the district court of the claim of bias by the Personnel Board is affirmed. In all other respects, the summary judgment against the plaintiff with respect to the suspensions and the demotion is reversed. The dismissal on motion of the plaintiff's second cause of action for the alleged constructive discharge is reversed. The cause is remanded for further proceedings in accord with this opinion.
 
 
 59
 IT IS SO ORDERED.
 
 
 
 [1]
 The Code of the City of Sand Springs, as amended in 1976, provided in part as follows:
 
 
 [7]
 24 Classified and Unclassified Service
 (1) All officers and employees of the City shall be divided into the classified and the unclassified service.
 (2) The following shall constitute the unclassified service:
 (a) All Councilmen, the Municipal Judge or Judges, the City Treasurer and the City Clerk who are selected by the Council.
 (b) The City Manager and the Assistant City Manager.
 (c) Members and Secretary of each Board, Commission or other plural authority.
 (d) All personnel who serve without compensation.
 (e) All temporary and part-time officers and employees not placed by the Council in the classified service by Ordinance or personnel rules.
 (3) All other officers and employees shall be in the classified service.
 III R. Appendix B.
 Section 501 of the city's Personnel Policies and Procedures Manual further provides as follows:
 All officers and employees in the classified service shall hold their respective positions during good behavior ..., and shall be suspended without pay, demoted, or removed from position only for good and sufficient cause.
 III R. Appendix D.
 
 
 [2]
 Section 512 of the Personnel Policies and Procedures Manual of the City of Sand Springs and Sec. 7.25 of the city code as amended in 1976 both provide a right of appeal only to those classified employees who have been laid off, suspended without pay for more than ten days, demoted, or removed from employment. See III R. Appendix B and D. In addition, Sec. 511.02 of the Personnel Policies and Procedures Manual of the City of Sand Springs specifically provides as follows:
 A department head may, for misconduct, suspend an employee without pay for a period not to exceed ten (10) working days for any one offense and not to exceed twenty (20) working days in a calendar year.... There shall be no appeal from such action by a department head. (Emphasis added).
 
 
 [3]
 The Policies and Procedures of the Sand Springs Police Department provide in part as follows:
 Sec. 4 DERELICTION OF DUTY
 Dereliction of duty on the part of any member of the Department is cause for disciplinary action.
 The following constitute violations of this section;
 B. Failure to abide by either written or oral orders of supervisory officers.
 III R. Appendix C.
 Section 510 of the Personnel Policies and Procedures Manual of the City of Sand Springs also provides as follows:
 An appointing authority may dismiss or suspend without pay an employee for any just and reasonable cause. The following are examples of just causes for such disciplinary actions:
 .01 Insubordination: Refusal to comply with the proper order of an authorized supervisor.
 III R. Appendix D.
 
 
 [4]
 The Policies and Procedures of the Sand Springs Police Department provide in pertinent part as follows:
 Sec. 70 VIOLATIONS OF THE POLICIES AND PROCEDURES
 B. Any violation of the Policy and Procedures Manual shall be dealt with as follows, and according to the violation:
 
 
 [1]
 First violation, oral reprimand
 
 
 [2]
 Second violation, written reprimand
 
 
 [3]
 Third violation, written reprimand with days off without pay, and a possible reduction in rank
 III R. Appendix C.
 
 
 [5]
 Plaintiff's amended complaint alleged that the second suspension on April 30, 1981 for writing checks without sufficient funds violated his constitutional rights
 
 
 [6]
 In his August 26, 1981 deposition, plaintiff cited the following incidents as specific examples of actions that constituted harassment or discrimination by employees of the City of Sand Springs: although plaintiff had more seniority than other police officers, he was denied the right to change from an evening to a day shift on numerous occasions (V R. 11-12); plaintiff was asked by the Chief of Police whether he would sign "something" saying that he would resign in eight months if placed on another shift (V R. 41); plaintiff was wrongfully accused of stealing a battery from a patrol car (V R. 12, 20-22); after someone urinated in plaintiff's patrol car when it was left for repair at the city garage, the Chief of Police failed to investigate the matter, provide plaintiff with a substitute car, or have plaintiff's car cleaned at the city's expense (V R. 12-13, 26-28); plaintiff was summarily suspended on April 30, 1981, for five days without pay for having "insufficient fund checks," even though other employees had not been suspended for similar behavior (V R. 14-15, 18-19); the Chief of Police and Assistant Chief of Police accompanied two deputies from Osage County, Oklahoma, to question and arrest plaintiff for stealing the axles and wheels (which he subsequently replaced) off a trailer he had originally intended to purchase (V R. 31-38); although plaintiff had the title of Lieutenant, he was not given the responsibilities and supervisory powers that go with that position (V R. 46)
 
 
 [7]
 Plaintiff also raises a First Amendment issue here by arguing that the City of Sand Springs' suspension provisions were unconstitutionally applied to punish and harass him for the successful exercise of his right to a due process hearing before the Personnel Board in May 1980 in the case of his first suspension and for filing this lawsuit in the case of his second suspension. See Brief of Appellant 36-38. The district court said in its order that there was no evidence of any First Amendment violation. II R. 757 n. 12. We agree with the district court's conclusion on this issue because under Connick v. Myers, 461 U.S. 138, 147, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983), this federal court is not the appropriate forum in which to review the wisdom of personnel decisions made by defendant allegedly in reaction to plaintiff's conduct on matters only of personal interest, rather than public concern
 
 
 [8]
 Plaintiff asserts in his brief on appeal that various news articles published in the City of Sand Springs newspaper contained "stigmatizing" statements made by defendant Kirk about the suspensions and demotion. Brief of Appellant 11. The text of these stories are not included in the record nor were they available to the trial court when it granted summary judgment for defendants. We, therefore, cannot consider plaintiff's contention that these articles establish a fact question which precludes summary judgment for defendants on the liberty interest claims. See Brown v. Parker-Hannifin Corp., 746 F.2d 1407, 1412 (10th Cir.1984) ("once a properly supported motion for summary judgment is made, the opposing party may not merely rest on the allegations in the complaint and must respond with some factual showing of the existence of a genuine issue of material fact") (emphasis added)
 
 
 [9]
 This case is unlike Bishop v. Wood, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976). There the Court, deferring to the interpretation of North Carolina law by the district court and court of appeals, held that a permanent employee had no property right under an ordinance that could be "construed as granting no right to continued employment but merely conditioning an employee's removal on compliance with certain specified procedures." The Court reasoned that even though the ordinance could also be construed as confering a "guarantee" of continued employment as required under state law, it was not unreasonable for the district court and court of appeals to find in the absence of a state court interpretation of the ordinance that petitioner "held his position at the will and pleasure of the city" according to the state's law governing contracts of employment that are terminable at will and the termination of teachers' employment. Id. at 345-47, 96 S.Ct. at 2077-79
 Here, however, the Oklahoma Supreme Court has indicated that the "cause" standard creates an expectation of continued public employment, and we have upheld this interpretation of Oklahoma law. For this reason, we also distinguish this case from Williams v. West Jordan City, 714 F.2d at 1019-20 (where we held that it was not unreasonable in the absence of state court decisions on point for the district court to conclude that a personnel rule, which provided that "[t]he Department Head may ... dismiss for cause any permanent employee," granted no right to continued employment under Utah's law governing employment contracts that are terminable at will); and from Shawgo v. Spradlin, 701 F.2d 470, 475-76 (5th Cir.) (a Texas statute governing employee suspensions was found to grant no right to continued employment to nonprobationary police officers, but merely conditioned their suspensions on compliance with certain specified procedures), cert. denied, 464 U.S. 965, 104 S.Ct. 404, 78 L.Ed.2d 345 (1983).
 
 
 [10]
 Plaintiff's entitlement to a hearing was based on his property interest in continued employment. Plaintiff further asserts that he was also deprived of a liberty interest when the demotion letter, containing allegations of insubordination and dereliction of duty, was circulated to his personnel file and made a part of the public record in the hearing held on October 23-24, 1980. I R. 52; Appellant's Reply Brief 5-6. Although we recognize that this argument raises a closer question as to the stigmatizing effect of the charges than the argument made by plaintiff concerning the September 29, 1980 notice of suspension, we believe that the reasons given for plaintiff's demotion were not sufficiently stigmatizing to implicate a liberty interest here
 In Staton v. Mayes, 552 F.2d 908, 911 (10th Cir.) cert. denied, 434 U.S. 907, 98 S.Ct. 309, 54 L.Ed.2d 195 (1977), we did hold that public charges of "willful neglect of duty and incompetence" would impose a stigma on a discharged employee. However, we have also held that statements indicating that plaintiff disagreed with defendant on the question of his authority were not sufficiently stigmatizing to give rise to a liberty interest claim. Asbill v. Housing Authority of Choctaw Nation of Oklahoma, 726 F.2d at 1503-04; see also Ventetuolo v. Burke, 470 F.Supp. 887, 895 (D.R.I.1978) (charges of insubordination and hostility toward employer were not sufficiently stigmatizing to implicate a liberty interest), aff'd, 596 F.2d 476, 484 (1st Cir.1979).
 Here the demotion notice stated only that plaintiff had "disobeyed the aforementioned order of suspension and [had] conducted [himself] in an insubordinate manner, to the detriment of the Police Department." It said that plaintiff disobeyed the chain of command, which was a violation in dereliction of duty. I R. 52. Moreover, the letter did not charge plaintiff with dishonest or immoral conduct. See Sipes v. United States, 744 F.2d at 1422; Asbill, 726 F.2d at 1053. We conclude that plaintiff's liberty interest claim concerning his demotion must fail.
 
 
 [11]
 Plaintiff does not contend that a pre-demotion hearing was required here. We, therefore, need not address whether a post-demotion hearing was sufficient to meet the standards of due process
 
 
 [12]
 We are mindful that we have now held that the denial of any appeal or hearing concerning the September 1980 suspension could not be dismissed because of the denial of procedural due process. Nevertheless the belief of the Board that it lacked jurisdiction to determine the propriety of the suspension which premised the demotion showed a lack of bias
 
 
 [13]
 The procedure followed by the Personnel Board at the demotion hearing was as follows: The City presented its case first; each witness for the City made a statement, followed by questions first from the Personnel Board, then the attorney for the City, and finally the attorneys for plaintiff. After the City presented its arguments, plaintiff was permitted to testify and call witnesses to make statements on his behalf. These statements were followed by questions from first the Personnel Board, then the attorneys for plaintiff, and finally the attorney for the City. At the close of plaintiff's presentation, the Board recessed for an executive session to discuss the arguments made; the Board then returned to the meeting to render its decision. IV R. 8-9
 
 
 [14]
 This case is distinguishable from Shawgo v. Spradlin, 701 F.2d 470, 479-81 (5th Cir.), cert. denied, 464 U.S. 965, 104 S.Ct. 404, 78 L.Ed.2d 345 (1983). There the court decided that plaintiff's due process right to rebut the charges against him was not offended by the refusal of the commission reviewing his demotion to hear certain evidence in his defense. The court so held mainly because plaintiff was able to present his essential defenses at the hearing. Here, however, the Board's refusal to hear evidence concerning the propriety of the September 29, 1980 suspension deprived plaintiff of one of the essential defenses he sought to raise at the demotion hearing that plaintiff was not insubordinate in declining to abide by an improper order of his supervisor
 
 
 [15]
 Plaintiff claimed that he was harassed when he was forced to work the evening shift, was accused of misappropriating police property, and was summarily suspended for writing bad checks; plaintiff also alleged that the City Manager and Chief of Police used their positions to induce others in the community to bring financial pressure and criminal charges against him. I R. 46-47
 
 
 [16]
 Plaintiff incorporated these allegations into his second cause of action. See I R. 46
 
 
 [17]
 Cf. Altman v. Hurst, 734 F.2d 1240, 1244 (7th Cir.) ("Had plaintiff quit his job, ... his constructive discharge would have enabled him to maintain this action [under Sec. 1983]."), cert. denied, --- U.S. ----, 105 S.Ct. 385, 83 L.Ed.2d 320 (1984), Brown v. Brienen, 722 F.2d 360, 365 (7th Cir.1983) ("A public employer who drove an employee having a contract of employment to resign by making life unbearable for him ... might be violating the Fourteenth Amendment and section 1983.")
 
 
 [18]
 Courts have held that the presence of false and defamatory information in an employee's personnel file may constitute "publication" if not restricted for internal use. See Burris v. Willis Independent School District, 713 F.2d 1087, 1092 (5th Cir.1983) (although the mere presence of defamatory information in confidential personnel files does not amount to a violation of one's liberty rights, an evidentiary hearing is required where the information contained in the files is clearly false and there is a possibility that the information will not be kept confidential); Velger v. Cawley, 525 F.2d 334, 336 (2d Cir.1975) (charges entered in the personnel file of a dismissed policeman amounted to publication given that "New York City ... grants ready access to its confidential personnel files to all governmental police agencies"), rev'd on other grounds sub nom Codd v. Velger, 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977) (per curiam); Doe v. United States Civil Service Commission, 483 F.Supp. 539, 570-71 (S.D.N.Y.1980) (derogatory statements in plaintiff's files were sufficient to demonstrate publication because they were "memorialized in an official ... report that could be relied upon by the Commission or another federal agency in the event that [plaintiff] reapplie[d] for a fellowship or [sought] another high level government position")
 Moreover, we have recognized that accusations of dishonesty, such as are involved in a charge of "stealing", are sufficiently "stigmatizing" to implicate a liberty interest. See e.g., Sipes v. United States, 744 F.2d at 1422; Walker v. United States, 744 F.2d at 69; Lentsch v. Marshall, 741 F.2d at 304.
 In thus concluding that plaintiff has sufficiently alleged a deprivation of a liberty interest in the matter of his constructive discharge, we distinguish this case from Paul v. Davis, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). There the Court held that dissemination of a flyer designating plaintiff as an "active shoplifter" did not alter or extinguish a right or status of plaintiff previously recognized by state law and thus did not implicate a liberty or property interest sufficient to invoke the protection of the Due Process Clause. Id. at 711-12, 96 S.Ct. at 1165-66. Here, however, plaintiff had an accompanying loss of employment; "this type of alleged dismissal, amidst potentially stigmatizing charges of immorality, is sufficient to implicate the guaranty of procedural due process embodied in the Fourteenth Amendment." Huff v. County of Butler, 524 F.Supp. at 755; see also Reussow, 483 F.Supp. at 745.