827 F.2d 648
 Hisham TARABISHI, Plaintiff-Appellant,
v.
McALESTER REGIONAL HOSPITAL, aka McAlester Regional Health
Center; Authority Public Trust Status; James L. Dunagin,
M.D., Chief of Staff, McAlester Regional Hospital; Thurman
Schuller, M.D.; Robert M. Adams, M.D.; Michael F. Boyer,
M.D.; M.D. Bellamy, M.D., Defendants-Appellees.
 No. 85-2329.
 United States Court of Appeals,
Tenth Circuit.
 Aug. 17, 1987.
 
 Wesley Brown of Gotcher, Brown & Bland, McAlester, Okl., for plaintiff-appellant.
 George F. Short (Cynthia L. Sparling, with him on the brief), Oklahoma City, Okl., for defendants-appellees.
 Before SEYMOUR and BARRETT, Circuit Judges, and BROWN*, District Judge.
 BARRETT, Circuit Judge.
 
 
 1
 M. Hisham Tarabishi (Tarabishi), appeals from an adverse judgment entered in favor of McAlester Regional Hospital (MRH) and its board of trustees, hereinafter collectively referred to as appellees. Tarabishi, a medical doctor, filed this action seeking injunctive relief and damages after proceedings were initiated relative to his staff privileges at MRH.
 
 
 2
 Tarabishi moved to McAlester, Oklahoma in the spring of 1979. Upon arrival he obtained staff privileges at MRH. MRH, alias McAlester Regional Health Center Authority, is a public trust, founded under the laws of Oklahoma.[1] Tarabishi also associated himself with the McAlester Clinic. By the fall of 1979, Tarabishi had disassociated himself from the McAlester Clinic and had gone into business for himself in competition with the Clinic.
 
 
 3
 In the fall of 1982, Tarabishi publicly announced his intention to construct a clinic where he would perform out-patient surgery in competition with MRH. Thereafter, Tarabishi applied to the State of Oklahoma for a Certificate of Need for the operation of the clinic. Tarabishi's application was apparently based, in part, on his having staff privileges at MRH or a transfer agreement with MRH. During the application hearing on Tarabishi's Certificate request, MRH's administrator and one of its trustees appeared to protest the issuance of a certificate. Oklahoma granted Tarabishi a Certificate of Need on May 25, 1983.
 
 
 4
 In the later part of 1983, various ad hoc MRH committees were appointed to investigate a series of complaints against Tarabishi. Tarabishi received written notices of the charges against him on November 14, 1983, January 14, 1984, February 24, 1984, and June 1, 1984. On March 22, 1984, before any disciplinary action was taken, Tarabishi filed his original complaint herein. Interviews were conducted for each of the respective complaints and Tarabishi was invited to explain or refute the charges. Thereafter, the ad hoc committee filed reports with an executive committee. The executive committee notified Tarabishi of the formal charges against him which included: operating without discussing procedures with the patient; improper evaluation of emergency cases; disruptive behavior toward the medical staff; and an incident concerning the administration of drugs. After notifying Tarabishi of the formal charges, the executive committee selected a hearing committee to conduct hearings.
 
 
 5
 Hearings were held on April 7 and 26, 1984. Tarabishi, represented by counsel, was allowed to question various doctors about the charges against him. Following the hearings, the hearing committee reported to the executive committee that it had been unable to find a solution to the charges against Tarabishi short of revocation. The hearing committee then remanded the matter to the executive committee.
 
 
 6
 On May 10, 1984, the executive committee notified Tarabishi that his medical staff privileges at MRH had been revoked. The executive committee's decision was reviewed by MRH's board of trustees in June, 1984. An additional hearing was held and Tarabishi and his attorney were again allowed to attend and present evidence. On July 17, 1984, the board of trustees voted unanimously to revoke Tarabishi's staff privileges.
 
 
 7
 On August 16, 1984, Tarabishi filed an amended complaint in federal district court seeking: damages and injunctive relief under 42 U.S.C. Sec. 1983 for loss of his staff privileges; damages under 42 U.S.C. Sec. 1985(3) for appellees' conspiracy to violate his civil rights; and damages for appellees' tortious interference with his contractual rights and privileges at MRH and with others.
 
 
 8
 Prior to trial, appellees filed several motions to dismiss alleging that Tarabishi's complaint failed to state a claim upon which relief could be granted and that the court lacked subject matter jurisdiction. Appellees argued that plaintiff had failed to establish that the revocation of his medical staff privileges constituted action under color of state or local law, and that a conspiracy in violation of Sec. 1985(3) could not exist in the absence of action under color of state or local law. The motions were denied and the case proceeded to trial.
 
 
 9
 After both parties had rested, the appellees renewed their motions to dismiss and for a directed verdict. Tarabishi also moved for a directed verdict "as to the defendants' liability for violation of plaintiff's civil rights under 42 U.S.C. Sec. 1983, by denying the plaintiff due process and the revocation of plaintiff's hospital staff privileges." R., Vol. XIII at p. 2.462. The district court denied all the motions.
 
 
 10
 The court and counsel subsequently reviewed proposed jury instructions. Tarabishi objected to the instructions relative to acting under color of state law and good faith:
 
 
 11
 We would just object to that instruction [acting under color of state law] being given, I think that's a legal question, not a fact question, and I don't think there is any dispute as to any of the facts regarding the action by the board members being under color of state law or by being within the purview of state action. The defendants have put no evidence on to refute that, there is no dispute, no facts, there is nothing in the record to show other than state action by the board members, the board of trustees of the hospital. And I think that is a legal question, should be a directed matter.
 
 
 12
 * * *
 
 
 13
 * * *
 
 
 14
 The only other instruction is the good faith defense. I believe under the--I think it's the Oklahoma case of McGee versus Draper, 1977, it's a Tenth Circuit out of the Northern District of Oklahoma, 564 F2d 902. That before the good faith defense can be represented, it must be pled and proven affirmatively, both pled and proven. The instruction as given is correct, but.... I think it's questionable whether ... it was pled as an affirmative defense or whether there was any affirmative testimony put on to disprove or prove that affirmative defense of good faith.
 
 
 15
 R., Vol. XIII at p. 2.492 and 2.493.
 
 
 16
 Tarabishi's objections were overruled and the case was submitted to the jury. The jury returned a verdict in favor of the appellees on all three causes of action. Tarabishi's motion for a judgment n.o.v. and alternative motion for a new trial were denied.
 
 
 17
 On appeal, Tarabishi contends: (1) the evidence showed as a matter of law that MRH was acting under color of state law and it was error for the court to submit the issue to the jury; (2) the evidence showed as a matter of law that his staff privileges at MRH were a protected property interest and it was error to submit the issue to the jury; and (3) the court erred in denying his motions for a directed verdict and judgment n.o.v.
 
 I.
 
 18
 Tarabishi contends that the evidence showed as a matter of law that appellee MRH, a public trust, was acting under color of state law and that the district court erred in submitting this issue to the jury. Appellees respond that MRH was a private hospital and that the relationship between MRH and the State of Oklahoma was a proper subject for inquiry by the jury.
 
 
 19
 The provisions of Sec. 1983 apply only to persons who deprive others of rights secured by the Constitution or laws of the United States and who act under color of state statute, ordinance, regulation, custom or usage. J & J Anderson, Inc. v. Town of Erie, 767 F.2d 1469 (10th Cir.1985). The ultimate issue in determining whether a person is subject to suit under Sec. 1983 is whether the alleged infringement of federal rights is fairly attributable to the state. Milonas v. Williams, 691 F.2d 931 (10th Cir.1982).
 
 
 20
 State action does not arise, for purposes of a Sec. 1983 action to regain staff privileges, merely because a private hospital receives governmental aid and is subject to state regulation. Ward v. St. Anthony Hospital, 476 F.2d 671 (10th Cir.1973). State action does not arise "solely on [the basis of] receipt of governmental funds, extensive governmental regulation and a localized geographic monopoly enjoyed by the hospital." Loh-Seng Yo v. Cibola General Hospital, 706 F.2d 306, 308 (10th Cir.1983).
 
 
 21
 Pivotal in any Sec. 1983 action is whether the challenged activity can realistically be considered state action. In Rendell-Baker v. Kohn, 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982), the court observed:
 
 
 22
 The ultimate issue in determining whether a person is subject to suit under Sec. 1983 is the same question posed in cases arising under the fourteenth Amendment: is the alleged infringement of federal rights "fairly attributable to the State?" Lugar v. Edmondson Oil Co., post [457 U.S.] at 937 [102 S.Ct. at 2753]. The core issue presented in this case is not whether petitioners were discharged because of their speech or without adequate procedural protections, but whether the school's action in discharging them can fairly be seen as state action. If the action of the respondent school is not state action, our inquiry ends. (Emphasis added, footnote omitted.)
 
 
 23
 457 U.S. at 838, 102 S.Ct. at 2770.
 
 
 24
 In analyzing what actions may be "fairly attributable to the State," the Court in Lugar v. Edmondson Oil Co., 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982), opined:
 
 
 25
 Our cases have accordingly insisted that the conduct allegedly causing the deprivation of a federal right be fairly attributable to the State. These cases reflect a two-part approach to this question of "fair attribution." First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible.... Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State....
 
 
 26
 Although related, these two principles are not the same. They collapse into each other when the claim of a constitutional deprivation is directed against a party whose official character is such as to lend the weight of the State to his decisions.
 
 
 27
 457 U.S. at 937, 102 S.Ct. at 2753.
 
 
 28
 Tarabishi argues that the evidence showed as a matter of law that appellants MRH and its trustees were acting under color of state law and that the court erred in submitting this issue to the jury. Furthermore, it is clear under Rendell-Baker and Lugar that appellants are subject to suit under Sec. 1983 if the alleged infringement of federal rights is "fairly attributable to the State." Applying this standard to the facts herein, we hold that the evidence did establish as a matter of law that the appellants were acting under color of state law and that the court erred in submitting that issue to the jury.
 
 
 29
 As set forth above, MRH is a public trust established in accordance with 60 Okla.Stat.Ann. Secs. 176-180, Trusts For Furtherance of Public Functions. Trusts established under Sec. 176 are governed by trustees who are designated as public officers under Sec. 178. Sec. 178 also provides that:
 
 
 30
 Every person hereafter becoming a trustee of a public trust first shall take the oath of office required of an elected public officer.... The oaths of office shall be administered by any person authorized to administer oaths in the State of Oklahoma, and shall be filed with the Secretary of State in trusts wherein the State of Oklahoma or a governmental agency of the state is the beneficiary; in the office of the county clerk in a trust wherein any county or political or governmental subdivision thereof is beneficiary; and in the office of the clerk of the municipality in a trust wherein any municipality or political or governmental subdivision thereof is the beneficiary.
 
 
 31
 Sec. 179 defines the status and liability of trustees:
 
 
 32
 The trustee, or trustees, under such an instrument or will shall be an agency of the State and the regularly constituted authority of the beneficiary for the performance of the functions for which the trust shall have been created. No trustee or beneficiary shall be charged personally with any liability whatsoever by reason of any act or omission committed or suffered in the person of any act or omission committed or suffered in the performance of such trust or in the operation of the trust property; but any act, liability for any omission or obligation of a trustee or trustees, in the execution of such trust, or in the operation of the trust property, shall extend to the whole of the trust estate, or so much thereof as may be necessary to discharge such liability or obligation, and not otherwise.
 
 
 33
 Thus, under the laws of Oklahoma, MRH is a public trust and its trustees are public officers acting as an agency of the State of Oklahoma. The record does not indicate that there was any factual dispute over whether the action of the trustees constituted state action under the laws of Oklahoma. The district court erred in submitting the issue of whether the appellees were acting under color of state law to the jury. Accordingly, we hold that the actions of the appellee trustees in terminating Tarabishi's staff privileges were actions "fairly attributable to the state." The enabling legislation providing for the creation of MRH designates the trustees as public officers and an agency of the state.
 
 II.
 
 34
 Tarabishi contends that the evidence established as a matter of law that his staff privileges at MRH were a protected property interest and that it was error to submit the issue to the jury.
 
 
 35
 Whether the facts establish a property interest is a question of law. Property interests are not created by the constitution but rather "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." Cleveland Board of Education v. Loudermill, 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985), quoting Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). See also Curtis Ambulance Service v. Shawnee County Board of County Commissioners, 811 F.2d 1371, 1375 (10th Cir.1987); Koerpel v. Heckler, 797 F.2d 858, 864 (10th Cir.1986); Bailey v. Kirk, 777 F.2d 567, 573 (10th Cir.1985).
 
 
 36
 Based on the limited record on appeal and the lack of any objections to the court's instruction on property rights, we are unable to hold whether the evidence showed as a matter of law that Tarabishi's staff privileges at MRH were a protected property interest.
 
 III.
 
 37
 The judgment in favor of appellees is reversed and vacated. The case is remanded for further proceedings.
 
 
 38
 REVERSED AND REMANDED.
 
 
 
 *
 Honorable Wesley E. Brown, Senior United States District Court Judge for the District of Kansas, sitting by designation
 
 
 [1]
 Trusts for Furtherance of Public Functions. 60 Okla.St.Ann, Secs. 176-180